No. **WR-CV-35-88**
# District Court of the Navajo Nation
### Judicial District of Window Rock, Arizona

---

**Indian Construction Services, Plaintiff,**
**v.**
**Navajo Housing Authority, Defendant.**
**Decided August 22, 1989**

---

## FINDINGS OF FACT CONCLUSIONS OF LAW, OPINION AND ORDER

James R. Condo, Michael L. Rhees, Snell and Wilmer Law Firm, Attorneys for Plaintiffs; Genevieve Chato, Law Office of Chato, Attorney for Defendant NHA.

Judge Robert Yazzie Presiding.

## FINDINGS OF FACT

The Navajo Housing Authority (NHA) and Indian Construction Services (ICS) entered into a construction contract where ICS agreed to build 170 dwelling units at five locations. ICS' complaint against NHA initially alleged five claims for breach of contract; however, three of the claims have been resolved. ICS seeks damages of $276,138.00 for the two remaining claims. These two claims concern project sites in Chinle, Arizona which are designated by NHA project numbers AZ 12-82 and AZ 12-87.

ICS' first claim involves NHA's refusal to approve a change order request of May 8, 1986, in the amount of $218,178.00, for costs alleged to have resulted from changes in the water and sewer installation at the two sites.

The second claim deals with NHA's refusal to approve a change order request of September 22, 1986, which was amended October 17, 1986, in the amount of $57,960.00. It concerns costs alleged to have occurred due to delays in gas line installation at both sites and delays in testing water lines at the AZ 12-87 site.

For purposes of the suit, the key section of the contract is Section 10 which provides in relevant part:

> (a) All disputes ... and all claims for alleged breach of contract shall within 10 days of commencement of the dispute, be presented to the NHA in writing....

> (d) Unless the contractor has (1) given notice of any dispute in accordance with paragraph (a) ... and (3) brought suit within (i) 120 days after receipt of payment under section 38 ... NHA's decision shall be final and conclusive, and the contractor hereby agrees that his noncompliance with these conditions precedent constitutes a waiver of his right to assert his claim.

There are two relevant statutes for purposes of this suit. 6 N.T.C. sec. 616(b)(1) provides:

> The Navajo Tribe gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract, claim or obligation arising out of its activities, the Authority to agree by contract to waive any immunity from suit which the Navajo Housing Authority might otherwise have....

6 N.T.C. sec. 623 provides:

> All property, including funds acquired or held by the Authority pursuant to this subchapter, shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall any judgment against the Authority be a charge or lien upon such property.

## ISSUE I: IS THE NHA's WAIVER OF SOVEREIGN IMMUNITY PURSUANT TO 6 N.T.C. SEC. 616(b)(1) CONDITIONED UPON ICS' COMPLIANCE WITH THE CONDITIONS PRECEDENT SET FORTH IN SECTION 10 OF THE CONSTRUCTION CONTRACT?

NHA asserts ICS was required to uphold the conditions precedent contained in Section 10 of the construction contract in order for NHA's waiver of sovereign immunity under 6 N.T.C. sec. 616(b)(1) to take effect. The Authority further contends ICS has breached two of these conditions precedent — thus preserving NHA's sovereign immunity. However, 6 N.T.C. sec. 616(b)(1) states the Navajo Nation has irrevocably waived any sovereign immunity from suit which the NHA might otherwise have had. The Navajo Nation Supreme Court has also ruled that this provision means what it appears to mean. In *The Navajo Housing Authority v. Howard Dana and Associates*, 5 Nav. R. 159 (1987), the Court held that "6 N.T.C. sec. 616(b)(1) is a waiver of the NHA's immunity with respect to the right to be free from suit."

NHA's waiver of sovereign immunity is unconditional. It does not rely on contract provisions or compliance with any contract terms. The Motion to Dismiss cannot be upheld on this basis.

## ISSUE II: IS NHA'S WAIVER OF SOVEREIGN IMMUNITY PURSUANT TO 6 N.T.C. SEC. 616(b)(1) RESTRICTED BY THE GENERAL IMMUNITY FROM LEVY AND EXECUTION CONTAINED IN 6 N.T.C. SEC. 623?

NHA argues that even if it did waive its sovereign immunity pursuant to 6 N.T.C. sec. 616(b)(1), this waiver is restricted by the general immunity from levy and execution contained in 6 N.T.C. sec. 623. In *Dana*, the Court held that any waiver of "the NHA's immunity from levy and execution must be clear and express, and any ambiguity will not be construed as a waiver of immunity." 5 Nav. R. at 160.

Here the contract contains no language promising funds will be available, nor does it contain any other language which can be construed as an express waiver of immunity from levy and execution. The only provision of the contract even remotely resembling a waiver is the Contract Price provision. However, if it is interpreted as a waiver, the requirement of 6 N.T.C. sec. 616 that waivers of immunity be agreed to would be rendered meaningless — for nearly every contract necessarily contains terms of payment or consideration.

Although NHA did not relinquish its general immunity from levy and execution, this immunity is not absolute. *Dana* relied heavily upon *Namekagon Development Co. v. Bois Forte Reservation Housing Authority*, 517 F. 2d 508 (8th Cir. 1975). The *Namekagon* Court held:

> "... though the defendant could and did, refuse to relinquish its general immunity from levy and execution, it did relinquish that immunity as to all funds it recieved from HUD for payment of its contractual obligations to Namekagon by Article IX of their contract." 517 F. 2d at 510.

While NHA has not waived its general immunity from levy and execution, it has waived its immunity at least to the extent that funds have been promised to be available for performance of the contract. Even though the contract contains no express promise that funds have been reserved or set aside for payment, such a provision is implied. Parties to contracts are required to deal in good faith. Thus, when parties agree to a contract price, there is a clear implication that funds will be available to pay that price.

In both *Dana* and *Namekagon*, the plaintiffs obtained valid judgments against the respective housing authorities. Both cases recognized it was proper to pursue the suits to judgment despite the defendants' general immunity from levy and execution. In *Dana*, the Court explicitly ruled: "Dana may be able to levy and execute on property and funds which fall outside the protection of 6 N.T.C. sec. 623."

Although NHA retains it general immunity from levy and execution, it has waived its immunity up to the amount of the contract price. ICS may have difficulty collecting any possible judgment above that amount; however, this fact does not bar the suit. Consideration of this issue is premature.

### ISSUE III: HAS ICS WAIVED ITS RIGHT TO BRING SUIT THROUGH A FAILURE TO COMPLY WITH CONDITIONS PRECEDENT CONTAINED IN SECTION 10 OF THE CONTRACT?

Section 10 of the contract contains the only provisions which clearly and unambiguously constitute conditions precedent. NHA contends ICS has violated two provisions of Section 10 of the contract. This court will first consider Section 10(d)(3)(i).

A. COMPLIANCE WITH SECTION 10(d)(3)(i)

Section 10(d)(3)(i) requires any suit against the NHA to be filed within 120 days of payment under Section 38 of the contract. Although one such payment was made on February 11, 1987, an additional payment was made on September 17, 1987.

NHA drafted the contract and a contract is most strictly construed against the party drafting it. *Kingman Water Co. v. United States*, 253 F.2d 582 (9th Cir. 1958); *Hartford v. National Life Insurance*, 83 Ariz. 43, 299 P.2d 635 (1956). Because there is no specific requirement of payment within 120 days of the initial payment under Section 38, September 17, 1987 must be considered the relevant date here. Therefore, ICS satisfied this condition by filing suit on December 21, 1987.

B. COMPLIANCE WITH SECTION 10(a)

Section 10(a) requires all disputes and claims to be presented to the NHA in writing within ten days of the commencement of a dispute. Because the two claims arose from different sets of circumstances, they must be considered separately for compliance with this requirement.

In regard to the first claim, for $218,178.00, NHA instructed ICS to cease all work on water and sewer installation on November 1, 1985. Only five days later, ICS responded by notifying NHA it could "no longer tolerate losses in time and materials" which it was incurring as a result of the Stop Work Order.

Additionally, on November 11, 1985, the project architect notified NHA that ICS would prepare a proposal for additional compensation after it received revised, properly approved utility plans. These letters constituted sufficient notice to preserve ICS' right to assert it claim for additional compensation here.

Exactly when a dispute commences under Section 10(a) is ambiguous. However, in regard to the second claim, ICS has failed to meet any reasonable interpretation of the ten day notice requirement.

ICS argues that a "dispute" cannot arise until after a change order request has been denied; therefore, it contends Section 10(a) merely sets forth the procedure for requesting additional time or compensation as a result of NHA's instructions. Such an interpretation of Section 10(a) is totally out of context with Section 10 as a whole. It is based upon circular reasoning.

The notice requirement of Section 10(a) is clearly a condition precedent. It requires that written notice of disputes be presented to NHA within 10 days of their commencement. To hold this 10 day period does not begin until after written notice has been provided makes the provision irrelevant.

In regard to the second claim, ICS has violated the condition precedent contained in Section 10(a) of the contract. If this claim is allowed, it must either be based upon a waiver of the notice requirement by NHA, or upon NHA's awareness of the underlying conditions that gave rise to the requested cost adjustments.

## ISSUE IV: HAVE THE ACTIONS OF NHA CONSTITUTED A WAIVER OF ITS RIGHT TO DEMAND COMPLIANCE WITH THE CONDITIONS PRECEDENT CONTAINED IN SECTION 10 OF THE CONTRACT?

Conditions precedent may be waived as a matter of law by lack of enforcement of such conditions. *Chancy Building Co., Inc. v. Sunnyside School District No. 12*, 147 Ariz. 270, 709 P.2d 904 (Ariz. App. 1985). In *Chancy*, the Plaintiff requested a 90 day time extension due to changed conditions. The Defendant granted a 21 day extension and assessed liquidated damages for the remainder of the time Plaintiff was late, At trial, Defendant was granted a directed verdict because Plaintiff had failed to meet the notice requirements of the contract. However, the appellate court reversed the directed verdict on the ground that Defendant waived the notice requirement by considering Plaintiff's claim on its merits. The court held:

> Once [Defendant] undertook to determine and decide the merits of the claim supporting the request ... a jury could infer they waived compliance with the 7 day written notice provision. *Id.* at 907.

The instant case is similar. In both the NHA's "Findings of Fact" and in its letter to ICS dated May 1, 1987, NHA considered ICS' claims on their merits. The claim for $218,178.00 was partially accepted and partially denied. The second claim was denied because "the contractor was not substantially complete for MAO readiness." Neither of the determinations was in any way based on the alleged failure of ICS to give timely notice.

Additionally, *Chancy* also held:

> [B]arring claims for compensation is disapproved where the governing body is aware of the changed conditions and no prejudice is shown by lack of formal notice required by the contract. *Id.* (Also see *New Pueblo Constructors, Inc. v. State of Arizona*, 696 P.2d 185, 144 Ariz. 95 (1985).

*Chancy* is an Arizona case that provides precedent for finding a waiver here. NHA was aware of the problems underlying this claim and no prejudice has been shown by the lack of formal notice required by the contract. Additionally, NHA's denial of the claim was in no way based on ICS' failure to give timely notice. For these reasons, the 10 day notice requirement should be considered waived and the Motion to Dismiss should be denied.

## CONCLUSION

Defendant's Motion to Dismiss is hereby denied. The Navajo Nation has ruled that 6 N.T.C. sec. 616(b)(1) is an unconditional waiver of NHA's immunity with respect to the right to be free from suit. *Dana*, 5 Nav. R. 159. Although this waiver is restricted by the general immunity from levy and execution contained in 6 N.T.C. sec. 623, any discussion of this issue is premature. The Court's deci-

sion in *Dana* explicitly recognized that plaintiffs may be able to levy and execute on funds which fall outside the protection of 6 N.T.C. sec. 623. 5 Nav. R. at 160.

ICS has complied with the mandate of Section 10(d)(3)(i), that any suit against the NHA must be filed within 120 days of payment under Section 38 of the contract. In regards to the claim for $218,178.00, ICS has also met the 10 day notice requirement of Section 10(a) of the contract.

In regard to the claim for $57,960.00, ICS has failed to meet the 10 day notice requirement of Section 10(a). However, no prejudice has been shown by this lack of formal notice. NHA was aware of the problems underlying the claim. It also examined the claim on its merits after the 10 day period had expired. NHA's denial of the claim was in no way based on ICS's failure to give timely notice. Thus, the 10 day notice requirement has been waived.

## ORDER

Defendant's Motion to Dismiss is DENIED for reasons stated above.

IT IS FURTHER ORDERED that this matter shall be scheduled for a hearing on the merits.