NAMEKAGON DEVELOPMENT
CO., Appellee,

v.

BOIS FORTE RESERVATION HOUS-
ING AUTHORITY, Appellant.

No. 74–1863.

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1975.

Decided June 3, 1975.

Larry A. Boggs, Appellate Sec., Land & Natural Resources Div., U. S. Dept. of Justice, Washington, D. C., for appellant.

Tyrone P. Bujold, Duluth, Minn., for appellee.

Before LAY, ROSS and WEBSTER, Circuit Judges.

LAY, Circuit Judge.

Namekagon Development Company, a Wisconsin corporation, recovered a judgment for $273,535.00 for breach of contract against the Bois Forte Reservation Housing Authority (Authority), a public body created by the Bois Forte Reservation Business Committee of the Minnesota Chippewa Tribe. The district court, the Honorable Gerald Heaney of this court sitting by special assignment, also enjoined the Authority from dispersing a portion of the funds it had received from the Department of Housing and Urban Development for the purpose of constructing housing for any purpose other than satisfaction of the judgment. The

defendant does not now contest the damages or the finding of breach of contract. It has appealed only from the injunction issued by the district court on the ground that it enjoys sovereign immunity from levy and execution on its assets.

Under the provisions of 42 U.S.C. § 1401 et seq., only a local housing authority is eligible to receive and administer funds available from the federal government for the construction of low-income housing. In an effort to qualify for this funding, the Bois Forte Reservation Business Committee established the Authority by promulgating Reservation Housing Ordinance 69–2 on April 29, 1969. In Part V, section 2(a) of that ordinance, the tribal council expressly waived any immunity from suit which may have attached to the Authority by implication from the tribe's long-recognized immunity from suit. Section 2(a) provided:

2. The Authority shall have the following powers which it may exercise consistent with the purposes for which it is established:

a. The Council hereby gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract, claim or obligation arising out of its activities under this ordinance and hereby authorizes the Authority to agree by contract to waive any immunity from suit which it might otherwise have; but the Band shall not be liable for the debts or obligations of the Authority, except insofar as expressly authorized by this ordinance.

In the same ordinance, however, the following provision appeared as Part VII, section 6:

6. All property including funds acquired or held by the Authority pursuant to this ordinance shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall any judgment against the Authority be a charge or lien upon such property; *Provided,* however, that the provisions of this section shall not apply to or limit the right of obligees to pursue any remedies for the enforcement of any pledge or lien given by the Authority on its rents, fees or revenues or the right of the Federal Government to pursue any remedies conferred upon it pursuant to the provisions of this ordinance.

■ It is the Authority's contention that while section 2(a) may have waived the defense of sovereign immunity, section 6 placed restrictions on that waiver so that the net result of the ordinance was a waiver only of the right to be free from suit and not of the right to be free from judicial execution upon any judgment arising from such a suit. The Authority's argument is premised on the general rule that since an Indian tribe is immune from unconsented suit, if it does consent to suit, any conditional limitation it imposes on that consent must be strictly construed and applied. Maryland Casualty Co. v. Citizens Nat'l Bank of West Hollywood, 361 F.2d 517 (5th Cir.), cert. denied, 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 143 (1966). The plaintiff concedes the validity of this rule but points to that portion within section 2(a) of the ordinance which authorizes the council to further abrogate immunity by contract and to Article IX(a) of the contracts between Namekagon and the defendant which provided:

ARTICLE IX. *Approval by Government:*

a) The approval of this Agreement by the Government signifies that the undertaking by the Purchaser of the acquisition of the Improvements constitutes a "project" eligible for financial assistance under the Annual Contributions Contract identified in Exhibit "C"; that said Annual Contributions Contract has been properly authorized; that funds have been reserved by the Government and *will be available* to effect payment and performance by the Purchaser hereunder; and the Government approval of the terms and conditions hereof. (Emphasis added.)

Approval was obtained and the plaintiff urges that, by Article IX(a), the Authority waived any immunity from levy and execution on the particular funds in question for any debts arising under the contract.

█ Indian tribes have always been considered to have an immunity from suit similar to that enjoyed by the federal government. United States v. United States Fidelity Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). Here, however, general concepts of sovereign immunity are not pertinent since it is indisputable that the tribe waived, at least to some extent, the Authority's right to be free from suit.[1] The question is the extent to which that immunity was waived.

The very terms of the ordinance creating the Authority permit the council to "agree by contract to waive any immunity from suit which it might otherwise have." If we accept the proposition that section 6 of the ordinance would usually apply to prevent levy and execution on the basis of a judgment arising out of contract, it is nevertheless clear that in this particular contract, the council waived that immunity. We construe the council's express promise that the funds in question would be available to effect payment as a waiver of its immunity from levy and execution to the extent of claims against those funds arising from the performance of the Namekagon contract. As such the contract created an equitable lien on the money so reserved. *Cf.* Jamison Coal & Coke Co. v. Goltra, 143 F.2d 889 (8th Cir.), cert. denied, 323 U.S. 769, 65 S.Ct. 122, 89 L.Ed. 615 (1944).

█ We therefore conclude that though the defendant could, and did, refuse to relinquish its general immunity from levy and execution, it did relinquish that immunity as to all funds it received from HUD for payment of its contractual obligations to Namekagon by Article IX of their contract. We find

the district court properly enjoined the use of defendant's funds set aside for payment under the contract. Now, if necessary, the court may direct payment of the damages from the monies so reserved.[2]

Judgment affirmed.

---

1. In the district court, the tribe argued that it could not waive immunity absent express congressional approval. The district court disagreed and that portion of its decision is not before this court.

2. As recognized by the Restatement of Restitution § 161, comment *b* (1937): "Where the equitable lien is on a fund, for example a bank deposit, it is enforced by a direction to pay the claimant out of the fund."