Larry OGDEN, Appellant

v.

**IOWA TRIBE OF KANSAS AND NEBRASKA, Respondent.**

No. WD 67912.

Missouri Court of Appeals,
Western District.

April 29, 2008.

Creath S. Thorne, St. Joseph, MO, arguing on behalf of appellant.

Mark Gunnison, Overland Park, KS, arguing on behalf of respondent.

Before LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., and JAMES E. WELSH, JJ.

JAMES M. SMART, JR., Judge.

In March of 2006, Larry Ogden, after communication with the tribal chairman of the "Iowa Tribe Executive Committee," moved to Missouri to accept employment as manager of a truck stop near I–29 in Holt County, Missouri, known as the "Squaw Creek Eagles Nest Plaza." Several months later, Ogden was terminated from employment. Ogden sued the "Iowa Tribe of Kansas and Nebraska" ("Iowa Tribe") for breach of an employment agreement and for wrongful discharge. The Iowa Tribe filed a motion to dismiss the petition based upon tribal sovereign immunity. The trial court granted the motion to dismiss. Ogden appeals. We affirm.

## Immunity Issues

This case turns on issues related to the sovereign immunity enjoyed by recognized native American tribes. *See, e.g. Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). Ogden acknowledges that he was employed by the Iowa Tribe. He argues that the tribal corporation waived the tribe's immunity through a "sue and be sued" clause in the corporate charter of its federally formed corporation under 25 U.S.C. sec. 477. The Iowa Tribe argues in response that the "sue and be sued" clause was not an effective waiver of tribal immunity. The Iowa Tribe further argues that even if such language was an effective waiver as to the corporation, Ogden was employed only by the tribal government entity and never

had any dealings with the corporation formed by the tribe (hereafter, "the corporation"), which is separate for liability purposes. Thus, says the Iowa Tribe, any waiver in its corporate charter is irrelevant. The Iowa Tribe also says that whether the tribe was conducting commercial activities also makes no difference, citing *Oklahoma Tax Commission*, 498 U.S. at 510, 111 S.Ct. 905 and *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 760, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).

Ogden replies that if the Iowa Tribe has immunity, he needs an opportunity to obtain a factual determination of exactly which entity employed him. Ogden, however, sued only the Iowa Tribe, not any related corporation or any other party. He did not, at the time the tribe moved for dismissal, seek to add parties or engage in such discovery at that time. We cannot say that the trial court had any duty *sua sponte* to add any other party or to compel him to request further discovery. He, of course, is in control of his own litigation and may presumably proceed against any other party if he so desires. The only issue before us is the immunity of the party sued by Ogden, the Iowa Tribe.

### Standard of Review

■ Review of a circuit court's grant of a motion to dismiss is *de novo*. *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. banc 2007). When reviewing the dismissal of a petition for failure to state a claim, we treat all facts contained in the petition as true and construe them liberally in favor of the plaintiff. *Moynihan v. Gunn*, 204 S.W.3d 230, 233 (Mo.App.2006). Whether there is sovereign immunity is a question of law, which we review *de novo*. *State ex rel. City of Lee's Summit v. City of Lake Lotawana*, 220 S.W.3d 794, 798 (Mo.App. 2007). Of course, any dispute about mate-

rial facts will result in a remand to the trial court for a factual determination.

The tribe's motion to dismiss asserted first that it was immune from suit because the named and proper defendant was the tribe as a government entity, not as a corporation. The tribe also suggested that even if the proper defendant was the corporation, the "sue and be sued" clause did not waive the corporation's immunity. Because the trial court granted the motion without explanation, we do not know which of these arguments it found persuasive. We can uphold the motion to dismiss for any reason stated in the motion that the court properly might have relied upon to dismiss. *See S & P Props., Inc. v. City of Univ. City*, 178 S.W.3d 579, 581 (Mo.App. 2005).

### The Doctrine

■ Missouri courts have not thus far dealt with the issue of tribal sovereign immunity. However, sovereign immunity for native American tribes is a generally recognized, common-law rule. *Rosebud Sioux Tribe v. Val–U Constr. Co. of S.D.*, 50 F.3d 560, 562 (8th Cir.1995) ("*Val–U Constr.*"). The roots of this immunity lie in the United States Supreme Court decision *Turner v. United States*, 248 U.S. 354, 39 S.Ct. 109, 63 L.Ed. 291 (1919), in which the Court turned down a suit against the Creek Nation for damages incurred when members of the Creek tribe destroyed the fence of the plaintiff, who was not a native American. *Id.* at 356, 39 S.Ct. 109. The Court found that the tribe was immune, like other *sovereign* governments. The Court further concluded that the Creek Nation could not be sued without authorization from Congress, at least not without the Creek Nation's own consent. *Id.* at 358, 39 S.Ct. 109.

In 1940, the Court reiterated its approval of tribal immunity. *U.S. v. U.S. Fid. &*

*Guar. Co.,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). Relying on *Turner,* the Court in *United States Fidelity & Guaranty* concluded that because Congress had not acted to revoke or alter the immunity, the Indian tribes were exempt from suit. *Id.* at 512, 60 S.Ct. 653. Thirty-eight years later, in *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), the Court, recognizing that Congress could revoke or modify tribal immunity, held that the legislature must unequivocally express its intent to do so. *Id.* at 59, 98 S.Ct. 1670. The Court also stated that a tribe's waiver of its immunity cannot be implied, but must be "unequivocally expressed." *Id.* at 58, 98 S.Ct. 1670.

In 1991, the Court revisited the issue of tribal immunity in *Oklahoma Tax Commission,* 498 U.S. 505, 111 S.Ct. 905, which involved the tribal sale of cigarettes on tribal land and the tribe's refusal to collect state sales tax. The Court declined to limit the sovereignty doctrine to tribal government functions, thereby permitting immunity for such tribal business ventures. *Id.* at 510, 111 S.Ct. 905. In *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.,* 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), the Court held that immunity applied whether the tribe's commercial activities were on or off tribal lands. *Id.* at 760, 118 S.Ct. 1700.

The Court, however, found a waiver in *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 532 U.S. 411, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001). There, the Indian tribe had entered into a contract with C & L for the installation of a roof on a building owned by the tribe. *Id.* at 414, 121 S.Ct. 1589. In this contract there was an arbitration clause that stated that all claims arising out of or relating to the contract would be decided by arbitration. *Id.* at 415, 121 S.Ct. 1589. The Court concluded that the arbitration agreement as written effectively waived the tribe's immunity. *Id.* at 418, 121 S.Ct. 1589. The Court noted that the arbitration clause required resolution of all contract-related disputes between C & L and the tribe to be by binding arbitration, and that the contract's choice-of-law clause made it plain that the court with jurisdiction to enforce the award was the Oklahoma state court. *Id.* at 418–19, 121 S.Ct. 1589.

■ In summation, Supreme Court precedent has established that recognized native American tribes enjoy sovereign immunity from suit unless Congress has abrogated it through legislation, or unless the tribe waives its immunity. In either case, the intent to defeat or waive immunity must be "unequivocally expressed." In the absence of an express waiver, tribal immunity is enjoyed whether the tribe engages in governmental or commercial activities, and applies whether the action takes place on or off tribal lands.

### Tribe v. Corporation

Because Indian reservations have difficulty with their economic conditions, many tribes engage in commercial ventures to boost their economy. *See* Dao Lee Bernardi–Boyle, *State Corporations for Indian Reservations,* 26 Am. Indian L.Rev. 41, 43 (2001). However, because of the tribes' immunity from suit, many individuals and businesses are wary of doing business with tribes. *See id.* at 44.

■ In 1934, Congress adopted the "Indian Reorganization Act" (IRA), which authorized the creation of tribal organizations. 25 U.S.C. secs. 461–79 (1988). 25 U.S.C. sec. 476, hereinafter referred to as Section 16, provides for organization of tribal governments. The next statutory section, 25 U.S.C. sec. 477, ("Section 17"), permits the tribe to organize as a business corporation under United States federal

law.[1] It has been suggested that Section 17 was added because Congress was concerned that non-Indians would not do business with tribes due to tribal immunity. *See William V. Vetter, Doing Business with Indians and the Three "S" es: Secretarial Approval, Sovereign Immunity, and Subject Matter Jurisdiction,* 36 Ariz. L.Rev. 169, 175 (1994) (*Relying on Hearings of H.R. 7902,* 73d Cong.2d Sess. 90–100 (1934); S. REP. No. 1080, 73d Cong., 2d Sess. (1934)). The Iowa Tribe is a governmental entity organized under Section 16. The Iowa Tribe has also created a corporation organized under Section 17.

A 1958 opinion by the Department of the Interior explained that tribal entities under Section 16 and corporations under Section 17 are to be considered separate. *Request for Interpretive Opinion on the Separability of Tribal Organizations Organized under Sections 16 and 17 of the Indian Reorganization Act,* 65 Interior Dec. 483 (1958). The opinion explained that the 1934 legislation designed to formally recognize the tribes as sovereign entities was opposed by certain congressmen because of the concern that no one would give credit to an organization with the kind of immunity the tribe enjoys. *Id.* at 484. Because of these concerns, the bill was redrafted. *Id.* According to the opinion, the committee report on the redraft carefully distinguishes the political organization of the tribe from any business corporation operated by the tribe. *Id.* The opinion explicitly states that the "corporation, *although composed of the same members as the political body, is to be a separate entity, and thus more capable of obtaining credit and otherwise expediting the business of the tribe. . . .* As a result, the powers, privileges and responsibilities of these tribal organizations materially differ." *Id.* (emphasis added).

■ The courts recognize that if a tribal *corporation* is organized, it is an entity separate from the tribe itself. For that reason, the courts have been consistent in stating that even if the tribal corporation waives *its* immunity, that waiver does not apply to the tribal government. *See Ramey Constr. Co. v. Apache Tribe of the Mescalero Reservation,* 673 F.2d 315 (10th Cir.1982) (waiver clause in the corporate charter did not waive the tribal government's immunity); *Robles v. Shoshone–Bannock Tribes,* 125 Idaho 852, 876 P.2d 134 (1994) (waiver in corporate charter would have no effect on immunity of tribe); *Val–U Constr.,* 50 F.3d 560 (Val–U was dealing with the tribe as a sovereign, not the corporate entity, so the waiver in the corporate charter was not applicable); *Linneen v. Gila River Indian Cmty.,* 276 F.3d 489 (9th Cir.2002) (clause in the corporate charter waived immunity for corporate activities, but not for the governmental activities of the tribe).

■ The courts generally agree that the corporations also enjoy tribal immunity absent an "unequivocally expressed" abrogation by Congress or waiver by the tribal corporation. *See generally Santa Clara Pueblo,* 436 U.S. at 58–59, 98 S.Ct. 1670; *Am. Indian Agric. Credit Consortium v. Standing Rock Sioux Tribe,* 780 F.2d 1374 (8th Cir.1984). Neither party here suggests that Congress has taken any action that would affect the Iowa Tribe's immunity through legislation. However, Ogden suggests that the corporate entity of the

---

**1.** To form corporate enterprises, tribes are not forced to organize under Section 17. Tribes can, and often do, form corporations under their own laws or under state laws. *See Dixon v. Picopa Constr. Co.,* 160 Ariz. 251, 772 P.2d 1104 (1989); *Altheimer & Gray v. Sioux Mfg. Corp.,* 983 F.2d 803 (7th Cir.1993); *Wright v. Colville Tribal Enter. Corp.,* 159 Wash.2d 108, 147 P.3d 1275 (banc 2006).

Iowa Tribe has waived its immunity through a "sue and be sued" clause in the corporate charter.

### *"Sue and Be Sued" Clauses*

Many cases deal with waiver of tribal immunity through a "sue and be sued" clause in either a corporate charter or a tribal ordinance. In some of these cases, the entity is an unincorporated arm of the tribe, such as a housing authority with its own board of directors, but is not a corporation. The court in some of those cases involving incorporated tribal entities refuse to call the "sue and be sued" clause in any organizational documents a waiver of immunity as to the tribe in its sovereign capacity. *See Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76 (2d Cir.2001); *Hagen v. Sisseton–Wahpeton Cmty. Coll.*, 205 F.3d 1040 (8th Cir.2000); *Dillon v. Yankton Sioux Tribe Hous. Auth.*, 144 F.3d 581 (8th Cir.1998); *Huron Potawatomi, Inc. v. Stinger*, 227 Mich.App. 127, 574 N.W.2d 706 (1998); *Ransom v. St. Regis Mohawk Educ. & Cmty. Fund*, 86 N.Y.2d 553, 635 N.Y.S.2d 116, 658 N.E.2d 989 (1995); *Buchanan v. Sokaogon Chippewa Tribe*, 40 F.Supp.2d 1043 (E.D.Wis.1999).

Some other cases involving a tribal housing authority created under a HUD program have reached a contrary result, ruling that the "sue and be sued" clause in the tribe's enabling ordinance does waive the tribe's immunity. *See Marceau v. Blackfeet Hous. Auth.*, 455 F.3d 974 (9th Cir.2006); *Weeks Constr. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668 (8th Cir.1986); *Namekagon Dev. Co. v. Bois Forte Res. Hous. Auth.*, 517 F.2d 508 (8th Cir.1975); *Duluth Lumber & Plywood Co. v. Delta Dev. Inc.*, 281 N.W.2d 377 (Minn.1979); *McCarthy & Assoc. v. Jackpot Junction Bingo Hall*, 490 N.W.2d 156 (Minn.Ct.App. 1992); *Snowbird Constr. Co. v. United States*, 666 F.Supp. 1437 (D.Idaho 1987).

■ The Iowa Tribe's corporation, chartered under Section 17, as we have already seen, is considered separate from the tribal government for liability purposes. There is a "sue and be sued" clause in the corporate charter. Courts have concluded that the "sue and be sued" clause is a waiver of immunity as to the corporation (though not as to the tribe) unless there is something specific about the particular case that tempers the waiver in some way. *See, e.g., Robles v. Shoshone–Bannock Tribes*, 125 Idaho 852, 876 P.2d 134; *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489.

■ A "sue and be sued" clause in the corporate charter is irrelevant to whether immunity has been waived when it is not the corporate entity that is being sued. *See Native Am. Distrib. v. Seneca–Cayuga Tobacco Co.*, 491 F.Supp.2d 1056, 1065–70 (N.D.Okla.2007); *Ramey Constr.*, 673 F.2d at 320; *S. Unique, Ltd. v. Gila River Pima–Maricopa Indian Cmty.*, 138 Ariz. 378, 674 P.2d 1376 (Ct.App.1983).

In the present case, Iowa Tribe's corporation's "sue and be sued" clause reads as follows:

> [The tribal corporation has the power to] sue and to be sued in courts of competent jurisdiction within the United States; but the grant or exercise of such power to sue and to be sued shall not be deemed a consent by the said Tribe or by the United States to the levy of any judgment, lien or attachment upon the property of the Tribe other than income or chattels specially pledged or assigned.

This language mirrors the language found in cases where the clause was deemed to be a waiver of immunity as to the tribal corporation. *See Rosebud Sioux Tribe v. A & P Steel, Inc.*, 874 F.2d 550, 552 (8th Cir.1989); *Robles*, 876 P.2d at 136; *Ute Distrib. Corp. v. Ute Indian Tribe*, 149

F.3d 1260, 1268 n. 10 (10th Cir.1998); *Linneen,* 276 F.3d at 492. Language similar to the additional language stating that the clause should not be deemed "consent . . . to the levy of any judgment . . . upon the property of the Tribe" has been construed in *Namekagon Development,* 517 F.2d at 509, 510, as not limiting the waiver of immunity, but as simply affecting how a judgment could be enforced.

 The language indicating that a corporation can "sue and be sued" is boilerplate language for a typical business corporation. Most corporations do not enjoy any immunity and are amenable to suit in United States state and federal courts. In a typical corporate charter, the "sue and be sued" language indicates that the corporation is an entity in and of itself that can sue and be sued if a dispute arises. *See* HARRY G. HENN, HANDBOOK OF THE LAW OF CORPORATIONS AND OTHER BUSINESS ENTERPRISES, Ch. 3, Sec. A, 109–11 (2d ed.1970). The expression of such language is consistent with the intent of the shareholders and principals that their personal assets be protected from liability for corporate actions. *See id.* In the case of a native American tribe corporation organized under Section 17, however, the "sue and be sued" language may be understood as having special significance because the incorporator—the tribe—possesses immunity that can be waived as to the corporation itself. We need not, however, decide that issue in this case, because the corporation is not a party here; and any waiver by the corporation does not apply generally to the tribe, even if the tribe is engaged in business activities. *Kiowa Tribe of Okla.,* 523 U.S. at 760, 118 S.Ct. 1700.

### Other Arguments

 In addition to the foregoing arguments, Ogden also suggests (1) that because the truck stop is off reservation lands, sovereign immunity should not apply, and (2) that allowing the claim of sovereign immunity to stand would violate the due process and equal protection clauses of the United States Constitution. We understand Ogden's plea that justice and equity may be better served if the tribe is not allowed complete immunity when it operates business entities off of the reservation. But our Supreme Court has not addressed the matter, and we are faced with the federal common law holdings in cases such as *Kiowa Tribe of Oklahoma, supra,* to the effect that tribal immunity applies whether activities are governmental or commercial and whether they take place on or off tribal lands. Ogden fails to demonstrate that as an intermediate state appellate court, we have authority to rule contrary to established federal common law, which, thus far, has received the apparent approval of the United States Congress. We have not been shown that it is within the province of this court to abrogate the doctrine or refuse to recognize it. *See generally Am. Indian Agric. Credit Consortium v. Standing Rock Sioux Tribe,* 780 F.2d 1374, 1379 (8th Cir.1985) ("If injustice has been worked in this case, it is not the rigid express waiver standard that bears the blame, but the doctrine of sovereign immunity itself. But it is too late in the day, and certainly beyond the competence of this court, to take issue with a doctrine so well-established.")

### Government or Corporate Entity

Although we determine that the corporation's immunity has been waived, that waiver does not apply to the tribal governmental entity. In Ogden's Amended Petition for Damages, he pleads his claim against the "Iowa Tribe of Kansas and Nebraska" which he says is an "American Indian tribe[.]" Nowhere in the petition is there any allegation mentioning the concept of a corporation. His petition was

aimed at the tribe itself, as a governmental entity, rather than at a corporation formed by the tribe. No effort was made by any party to add a corporate entity as a defendant. Because the only named defendant, the Iowa Tribe, was immune, we conclude that the trial court properly granted the tribe's motion to dismiss.

### Conclusion

Because the tribe enjoys immunity from suit, and there is no showing that the tribe waived its immunity, we affirm the trial court's grant of the motion to dismiss.

HARDWICK and WELSH, JJ., concur.