DECISION AND ORDER
JAMES GENIA, Chief Justice.
This case comes to the Appellate Court as an appeal from an August 3, 2007 Opinion and Order of the Tribal Court, Judge Pro Tempore Pat Sekaquaptewa presiding. (“Tribal Court Opinion and Order”). The Tribal Court case involved a civil claim brought on December 15, 2000 by Frederick Roy Harrington, Jr. (Appellant Harrington) against the Tribal Council, then-Tribal Administrator Audrey Perry, and then-Tribal Chairman Gerald Chingwa of the Little Traverse Bay Bands of Odawa Indians (together, “Appellees”). Appellant Harrington’s civil claim stems from the Appellees’ termination of Appellant Harrington from his employment for engaging in political activity with fellow employees during work hours on LTBB property. Tribal Court Opinion and Order, 4.
The Tribal Court Opinion and Order resolved three separate issues presented in the case and identified a fourth issue as requiring further briefing and a setting of a hearing. First, it dismissed the Appel-lee’s Motion for Summary Disposition for being untimely filed; second, it dismissed Appellant Harrington’s actions against the Tribe for alleged violations of federal union organizing and civil rights laws as barred by sovereign immunity; and third, it dismissed Appellant Harrington’s federal 42 U.S.C. § 1983 claims against Appellees Perry and Chingwa for failure to state a claim under applicable court rules. Finally, the Tribal Court Opinion and Order ordered further briefing and the setting of a hearing on questions related to the process required pursuant Appellant Harrington’s employment termination under tribal law and the Employee Handbook.
In his appeal to the Appellate Court, Appellant Harrington requests review of two of the holdings of the Tribal Court Opinion and Order. These include the Tribal Court’s holding dismissing Appellant Harrington’s actions against the Tribe for alleged violations of federal union organizing and civil rights laws as barred by sovereign immunity and its holding dismissing his § 1983 claims against Appel-lees Perry and Chingwa for failure to state a claim under applicable court rules. With respect to the Tribal Court’s order that the parties submit further briefing on the questions related to the process required pursuant to Appellant Harrington’s employment termination, Appellant Harrington requested that he be permitted to proceed with the briefing request after the Appellate Court decided the issues presented on appeal.
I. FACTS
The Tribal Court’s Opinion and Order identified two items that it recognized as facts stipulated to by both of the parties. The first item was that Appellant Harrington had a conversation with two tribal *29 employees about a petition to remove a member of the Tribal Council at a picnic table behind the tribal offices while on break on September 20, 2000. The second item was that the Appellees terminated Appellant Harrington from his employment for engaging in political activity with fellow employees during work hours on tribal property. The Tribal Court Opinion and Order also discussed the application of the Employee Handbook and its Problem Resolution Procedures set forth in Section 711. The Opinion and Order noted that Section 711 of the Employee Handbook was adopted by a unanimous vote of the Tribal Council. It also found that Appellant Harrington “initially filed his claims against the Tribe in the form of an original action in the Tribal Court.” Tribal Court Opinion and Order, 11.
II. ANALYSIS
The Appellate Court reviews the Tribal Court Opinion and Order in accordance with the standard of review required by Rule 7.501 of the Rules of Appellate Procedures. Legal conclusions are reviewed de novo and factual findings are reviewed for clear error.
The Appellate Court begins its analysis by reviewing de novo the threshold legal question of whether the Appellant’s action is barred by sovereign immunity. If sovereign immunity does bar the action, then the Appellate Court lacks subject matter jurisdiction to decide the various issues raised by Appellant Harrington. For this reason, in any case involving a claim against the Tribe or Tribal officials, the Appellate Court must always consider at the outset whether an appellant’s action is brought within a valid waiver of sovereign immunity.
In this case, the Appellant’s action involves separate claims against the Tribal Council and two Tribal officials, the former Tribal Chairman and the former Tribal Administrator. Since the sovereign immunity analysis for the Tribe and Tribal officials differs, the Appellate Court takes a separate approach to analyzing whether sovereign immunity acts as a bar to the Appellant’s claim in each case.
a. Sovereign Immunity and the Action against the Tribal Council
It is well established that federally recognized Indian tribes are immune from suit unless that immunity has been expressly waived by either Congress or that particular tribal government. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), and Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). Since the adoption of the LTBB Constitution on February 2, 2005, the sovereign immunity of the LTBB Tribal Government is also explicitly affirmed.[1] Article XVIII, Section A of the LTBB Constitution reads, “The Little Traverse Bay Bands of Odawa Indians, including all subordinate entities, shall be immune from suit except to the extent that the Tribal Council clearly and expressly waives its sovereign immunity. ...” In this case, the Tribal Council, which Appellant Harrington named as a Defendant in this action and which also is a named Appellee in this appeal, is a subordinate entity of the Little Traverse Bay Bands of Odawa Indians and therefore *30 possesses the same immunity from suit that the Tribe enjoys.
The Tribal Constitution does not provide that the Tribe’s sovereign immunity is absolute, however. The same provision of the Constitution quoted above states that the Tribe is immune from suit “except to the extent that the Tribal Council clearly and expressly waives its sovereign immunity.” Thus, if the Tribal Council made a clear and express waiver of the Tribe’s immunity from Appellant Harrington’s lawsuit, then the merits of the issues raised against the Tribe can be reviewed by the Appellate Court consistent -with the Court’s Appellate Procedures. In this case, the Tribe’s immunity was subject to a limited waiver by virtue of Section 711 of the Employee Handbook that applied at the time of Appellant Harrington’s termination.
The Employee Handbook described the rights and responsibilities of Tribal Employees. Section 711 of the Handbook dealt with Problem Resolution Procedures, and a revised version of it was adopted by a unanimous vote of the Tribal Council on August 22, 1999. Tribal Court Opinion and Order at 10. Section 711 provides that “[employees have the right to appeal decisions that affect them personally as employees of the LTBB.” Employee Handbook at 68. This is followed by a section titled “Procedure,” another titled “Steps in the Problem Resolution Procedure,” and a third titled “Appeal.” In the “Procedure” section, the Handbook states that “[a]ny claims not conforming to the procedure as outlined shall not be considered.” Id. at 69. In the “Steps” section, the Handbook sets forth four steps that employees must comply with as part of the problem resolution procedure. After Section 711 describes these four steps, it then states in the following “Appeal” section that “[a]n employee making a good faith allegation of violation of the employee’s legal rights may bring an action for redress in Tribal Court.” Id. at 70 (emphasis added). The Tribal Court Opinion and Order held that this Section 711 “created a limited waiver of tribal sovereign immunity for tribal employees to appeal administrative decisions affecting their legal employment rights to the LTBB Tribal Court.” Tribal Court Opinion and Order at 11. The Appellate Court agrees that Section 711 effectively waived the Tribe’s sovereign immunity from suit under limited circumstances. By revising the grievance procedure in Section 711 to provide for a series of required steps for the processing of employee complaints, and by stating at the conclusion of these steps that an employee “may bring an action for redress in Tribal Court,” the Tribal Council “clearly and expressly” waived the Tribe’s sovereign immunity in accordance with the Tribal Constitution.
For Appellant Harrington’s action to proceed against the Tribal Council, however, the Appellate Court must also find that his action was validly brought within the scope of Section 711’s limited waiver of immunity. To resolve this question, the Appellate Court must first determine the circumstances under which appeals to the Tribal Court under Section 711 are permissible.
The Appellate Court does not read Section 711’s statement that “[a]n employee ... may bring an action for redress in Tribal Court” as a blank check that allows employees immediate access to Tribal Court at any time. Rather, the Appellate Court interprets the right of appeal in Section 711 within the broader context of the purpose, language and organization of Section 711 as a whole. This approach to interpretation is analogous to a widely-accepted principle of statutory construction that cautions courts against interpreting words and phrases in isolation, re *31 quiring instead that courts consider their language, text, object and structure as a whole. In this case, the Appellate Court finds that Section 711 imposes a multi-step process for processing employee complaints, and it provides for a right of appeal to the Tribal Court only as a final option once the four-step process is completed. This interpretation of the limited availability of the right to appeal to Tribal Court is supported by several facts. First, Section 711 clearly states under the “Procedure” heading that “[a]ny claims not conforming to the procedure as outlined shall not be considered.” Id. at 69. Second, Section 711 provides for appeals to the Tribal Court only after it carefully outlines a detailed procedure for processing employee complaints. This procedure involves the following four steps:
a) The first step requires that an employee discuss a complaint with a supervisor within a specified time frame. Id.
b) If the employee continues to feel that the matter is not satisfactorily addressed, the second step requires that an employee provide her supervisor with a written description of the complaint and requires that the supervisor provide a written response. Id. These written communications are also required to be shared with the human resources manager. Id.
c) If the employee continues to be dissatisfied with the outcome, the third step requires meeting with the department head. If the supervisor and department head are the same person, the procedure allows an employee to skip the third step and proceed to the fourth step. Id. An employee can also proceed to the fourth step if they remain dissatisfied with the handling of their complaint.
d) In the fourth step, the employee files the complaint with the Tribal Administrator, who must conduct a hearing on the matter. Id. The Tribal Administrator must then submit a response to the human resources manager. Id.
Because the right of appeal in Section 711 follows the four steps above and because the Section includes the statement that non-conforming claims shall not be considered, the Appellate Court concludes that the language, text and structure of Section 711 indicate that appeals to the Tribal Court are only available if an employee completes the entire procedure set forth in Section 711, including the four steps in the Problem Resolution Procedure. The Appellate Court also considers the object, or purpose, of Section 711 taken as a whole. The purpose of the Section is concisely stated in the Section’s first sentence, which states, “[i]t is the intent of this PROBLEM RESOLUTION procedure to provide an effective, efficient and orderly means for employees of the LTBB Tribal Operations to settle disputes concerning wages, hours and working conditions and the application of these Personnel Policies.” Id. at 68 (emphasis added). Thus, the purpose of the Section is to reduce inefficiencies and to provide for order in the handling of employee complaints. The Appellate Court finds that both of these purposes are consistent with holding that the right to appeal complaints to the Tribal Court is only available after completion of the entire four-step Problem Resolution Procedure. First, compliance with the procedure ensures that an employee carefully documents the nature of his complaint and communicates the details of the complaint to his supervisor, the department head and the tribal administrator. It also ensures that the employer’s response at each level of review is carefully documented in writing. Together, this process of recording the details of the complaint and the employer’s response creates a record that then serves as an efficient resource for the Tribal Court if *32 the complaint is ultimately appealed to it. This review process also provides multiple opportunities for a quick, inexpensive resolution of the complaint that, if successful, would be far more efficient than Tribal Court litigation. Alternatively, if the right of appeal were deemed by this Court to be available at any time for any employee, the result would be that employees could unilaterally choose to skip the four-step process of Section 711. The Tribal Court would then receive claims without a record documenting how the complaint was handled, causing resolution of the claims in Tribal Court to require greater amounts of time and resources.
For all these reasons, the Appellate Court concludes that right of appeal provided in Section 711 is only available if an employee exhausts each of the procedural steps outlined in the Section. Here, Appellant Harrington has not exhausted each of the procedural steps outlined in Section 711. The Tribal Court Opinion and Order noted this omission of Appellant Harrington by stating the following after detailing the procedural requirements of Section 711:
Plaintiff, proceeding without the assistance of an attorney, initially filed his claims against the Tribe in the form of an original action in the Tribal Court. In most state courts this would result in a dismissal of the action.
Tribal Court Opinion and Order, 11.
The factual finding must be sustained by the Appellate Court unless it is “clearly erroneous.” See Rule 7.501(A) of the Appellate Rules of Procedure. The Tribal Court record includes no evidence that Appellant Harrington complied with the Problem Resolution Procedures of Section 711. The Appellant did not submit to the Tribal Court any copy of the writings required by Steps 2 and 4[2], nor has Appellant alleged in any of his pleadings that he attempted to comply with this process.[3] Instead of providing such information, the Tribal Court record reflects that Appellant Harrington’s actions following his termination on September 29, 2000 included drafting a letter to the Tribal police on October 8, 2000 (9 days after the termination) and drafting additional letters to the Tribal Council, two of which were dated October 19, 2000 (20 days after the termination) and November 18, 2000 (50 days after the termination). Appellant Harrington ultimately filed his appeal in Tribal Court on December 15, 2000. As a result, even if the Appellate Court assumes all facts asserted by Appellant Harrington to be true, it remains the case that Appellant has failed to allege any fact that would support a conclusion that he complied with the required steps of the Problem Resolution Procedure of Section 711. Therefore, the Appellate Court upholds the Tribal Court’s factual finding that Appellate Harrington “initially filed his claims against the Tribe in the form of an original action *33 in the Tribal Court” without exhausting the procedural steps required by Section 711 of the Employee Handbook.
The Appellate Court notes that Appellant Harrington disputes whether Section 711 of the Employee Handbook applied to terminations of tribal employees. The Appellate Court’s review of this question begins with the text of the Employee Handbook, and the plain text of the Handbook indicates that Section 711 does indeed apply. This is because Section 711 states that its procedures for resolving employee complaints applies to “... the application of these Personnel Policies,” and “these Personnel Policies” include the Employee Handbook’s Section 403, which details employee rights upon termination. Thus, since terminations involved the application of the Handbook’s personnel policies set forth in Section 403, Section 711 applies to them. Even if a supervisor of a tribal employee were to mischaracterize Section 711 as not applying to employee terminations, such incorrect assertions could not effectively change the fact that Section 711 did, in fact, apply to them. This is due to the fact that any change to the Employee Handbook required Tribal Council action, or the change would be considered invalid. Handbook at 1 (“The only recognized deviations from the stated policies [in the Employee Handbook] are those authorized and signed by the Tribal Council.”)
The Appellant also argues that the Appellate Court should find that he was not required to follow the full Problem Resolution Procedure because the procedure allowed Appellee Perry, the then-Tribal Administrator, to “act as a prosecutor, judge and jury,” since the Tribal Administrator served as the Appellant’s supervisor and therefore had the authority to repeatedly respond to the Appellant’s complaint at each step of the complaint resolution process. The Appellate Court acknowledges that Appellant Harrington was unlikely to receive a reversal of the Tribal Administrator’s decision to terminate his employment under these facts. However, the involvement of the same Tribal Administrator in more than one step in the Problem Resolution Procedure does not exempt Appellant Harrington from following the mandated process of Section 711. Nor does the requirement that the Appellant strictly comply with the procedure of Section 711 before appealing to the Tribal Court guarantee that the appeal will be futile. The Tribal Court could have taken into account the repeated role of the Tribal Administrator in its review of the appeal. By participating in the Problem Resolution Procedure’s steps, Appellant Harrington’s patience would undoubtedly have been tested as he engaged in repeated communications and a final hearing all before the same individual, the Tribal Administrator. But this same process is also essential to allow a complete record to be developed for the Tribal Court’s review on appeal. If the Appellate Court were to hold that tribal employees could independently decide to forego the complaint procedures provided in the Employee Handbook and instead file a complaint directly in Tribal Court, the complaint procedures might never be used. Such a system would be contrary to the objective of Section 711, which is “to provide an effective, efficient and orderly means for employees of the LTBB Tribal Operations to settle disputes ...” Handbook at 68.
In conclusion, since Appellant Harrington failed to exhaust the steps required in the Problem Resolution Procedure, his appeal does not fall within the scope of the Tribe’s limited waiver of sovereign immunity established by Section 711. For this reason, the Appellate Court holds that Appellant Harrington’s claims against the Appellee Tribal Council are barred by sov *34 ereign immunity, and it consequently dismisses this portion of the appeal.[4]
b. Sovereign Immunity and the Action against Appellees Chingwa and Perry
Next we turn to the question of whether or not the claims against the two named individuals in this action, the former Tribal Chairman and the former Tribal Administrator, are also barred by sovereign immunity. As noted above, because the Appellant did not properly follow the necessary steps detailed in Section 711 of the Employee Handbook to avail himself of the Tribe’s limited waiver of sovereign immunity for employee disputes, the Tribal Council is immune from suit. Under the same reasoning, Appellant may not use the limited waiver contained in Section 711 to pursue his claims against former Tribal Chairman Chingwa and former Tribal Administrator Perry.
Therefore, for Appellant to pursue his claims against the individual Defendants he must rely upon some other Constitutional basis for finding a waiver of sovereign immunity. Article XVIII, Section B of the Constitution addresses when suits may be brought against Tribal officials. It states that “[o]fficials and employees of the Little Traverse Bay Bands of Odawa Indians who act beyond the scope of their duties and authority shall be subject to suit in Tribal Court for purposes of enforcing rights and duties established by this Constitution or other applicable laws.”
Appellant alleges that the individual Defendants are not immune from suit because they acted outside the scope of their authority by violating his rights under 42 U.S.C. § 1983 (“Section 1983”). Section 1983 is a federal statute that provides:
Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer’s judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
In order for § 1983 to apply, several elements must be satisfied. Most importantly, the defendant must be a “person” who acts “under color of any statute ... of any State or Territory or the District of Columbia.” (Emphasis added). In this case, this element is not present because the defendants acted under color of tribal law. A § 1983 action is unavailable “for persons alleging deprivation of constitutional rights under color of tribal law.” R.J. Williams Co. v. Ft. Belknap Housing Authority, 719 F.2d 979, 982 (9th Cir.1983). Because Harrington’s claim does not satisfy this element, the § 1983 claim fails.
In addition to the fact that Harrington is unable to rely on § 1983, he fails to allege any facts that would support a claim that *35 the Defendants Perry and Chingwa acted beyond the scope of their duties and authority.
CONCLUSION
For the reasons described above, the Appellate Court concludes that the Tribe and the individual Defendants in this litigation are protected by sovereign immunity and that Harrington’s claims against the Tribe and against the individual Defendants must be DISMISSED.
DECIDED AND APPROVED BY A UNANIMOUS APPELLATE COURT.

. Prior to the adoption of the LTBB Constitution on February 2, 2005, the Tribe was governed by an earlier, interim constitution titled the Constitution and By-Laws of the Little Traverse Bay Bands of Odawa Indians. The present LTBB Constitution states that it “shall supersede all previous constitutions and bylaws of the Little Traverse Bay Bands of Oda-wa Indians.” Preamble, LTBB Constitution.

. Section 711 provides that Step 3 can be skipped if an employee's supervisor and department head are the same person. Handbook at 69. Here, the Appellate Court assumes that this rule applies in this case. Consequently, this Opinion only considers whether Appellant Harrington complied with Steps 1, 2 and 4 before appealing to the Tribal Court.

. Appellant Harrington alleges that he was denied the opportunity to have a hearing after he was terminated. Second Brief in Support of Appeal at 17. However, there is no evidence that his request for a hearing was made in accordance with the Problem Resolution Procedures of Section 711, which required continued communication with the Tribal Administrator to develop a record of his complaint and the response he received. Instead, Appellant Harrington directed his post-termination demands for an administrative solution to his complaint to the Tribal Council.

. Because the Appellate Court dismisses the claim against the Tribal Council as barred by sovereign immunity, the Court does not reach the substantive merits of Appellant Harrington's claims against the Tribal Council,