*3 ORDER DISMISSING COMPLAINT WITH PREJUDICE AND ALLOWING FILING OF NOTICE OF APPEAL FROM ELECTION BOARD DECISION
DON OWEN COSTELLO, Chief Judge.
The court having found that it lacks subject matter jurisdiction over the claims set forth in plaintiffs complaint and that plaintiff cannot truthfully amend to allege jurisdiction over the claims; that plaintiff has submitted information to the court sufficient to preserve a right to appeal the October 29, 2008 decision of the Election Board denying plaintiffs challenge to the 2008 Tribal election; and that it has jurisdiction to consider the appeal pursuant to CITC Ch. 194 as amended August 6, 2008; now, therefore,
IT IS ORDERED that plaintiffs complaint be and hereby is dismissed, with prejudice;
IT IS ORDERED that counsel for defendants shall within ten days hereafter submit for the court’s approval a form of judgment of dismissal consistent with the opinion and this order; and
IT IS ORDERED that plaintiff shall within ten days hereafter file with the eourt a proper notice of appeal of the Election Board’s October 29, 2008 decision that comports with the provisions of CITC Ch. 194 as amended August 6, 2008, and is consistent with the opinion and this order, if plaintiff intends to preserve his right to such appeal.
Dated this 18th day of June, 2009.
OPINION
This opinion sets forth the court’s reasoning in ruling on defendants’ motion to dismiss plaintiffs complaint. The complaint is against the Coquille Indian Tribal Council and its members,[1] and the Coquille Indian Tribe Election Board and its members [2] for damages and other relief arising from defendants’ alleged violations of *4 plaintiffs rights to speech and equal protection under Tribal law and the Indian Civil Rights Act of 1968[3] (hereinafter, ICRA). Defendants move to dismiss the complaint on several grounds, one being that the court lacks subject matter jurisdiction. The court finds that it lacks subject matter jurisdiction and that plaintiff eannot truthfully amend the complaint to allege jurisdiction. The court today will enter an order dismissing plaintiffs complaint with prejudice.[4] The court finds that plaintiff has submitted information into the court’s record sufficient to preserve a right to appeal the October 29, 2008 decision of the Election Board denying plaintiffs challenge to the 2008 Tribal election, and that the court has jurisdiction to hear the appeal pursuant to CITC Ch. 194 as amended August 6, 2008. The court will allow plaintiff time to file sueh an appeal in proper form.
A
In his complaint plaintiff challenges actions taken by defendants in response to his request for contact information for all eligible voting members of the Tribe. Plaintiff alleges in substance that: (1) he requested the contact information to pursue election and referendum campaigns out of his concern over the defendant Tribal Council’s legislative adoption of Coquille Indian Tribal Code (hereinafter, CITC) Ch. 740, the Marriage and Domestic Partnership Ordinance; (2) defendant Tribal Council wrongfully withheld the contact information in response to his request and, when plaintiff ran for Vice Chair to challenge an incumbent who had voted for CITC Ch. 740, imposed an oath requiring candidates to use the contact information only for campaign purposes; (3) in response to plaintiffs election and referendum campaigns, and to prevent plaintiff from being able to obtain signatures under Coquille Tribal Constitution (hereinafter, Const.) Art. IV, defendant Election Board enacted an election rule granting the Election Board the authority to determine the appropriateness of materials submitted by candidates for tribal office for inclusion in voters’ packets, and, supported by defendant Tribal Council, determined certain materials submitted by the plaintiff to be inappropriate for inclusion; (4) the oath and the appropriateness standard for materials were not in keeping with the Tribe’s past practices; and (5) irregularities in referendum procedures imposed by the defendant Tribal Council effectively discriminate against General Council members residing off the reservation and outside the Tribe’s five-county service area. Plaintiff alleges that defendants violated his rights to free speech and equal protection under the Tribe’s law and the ICRA, and that they have discriminated against tribal *5 members residing outside the five county service area.
By way of relief plaintiff asks the court in substance to: (1) enter judgment against defendants that they have willfully violated the ICRA; (2) find that defendants’ conduct was malicious and order them to pay punitive damages; (3) permanently enjoin and restrain defendants and unnamed others who are not parties to the case from further violations of the ICRA or other applicable tribal law(s); (4) impose orders on defendants Tribal Council and Election Board to regulate a variety of General Council contact information, election and referendum procedures; and (5) grant to plaintiff such other and additional relief as is just and proper.
Defendants appear specially[5] pursuant to CITC 620.120(12)(a) §§ (1), (5) and (8) and move to dismiss plaintiffs complaint on four grounds: “(1) [T]he tribal court lacks subject matter jurisdiction over the matters alleged in the complaint; (2) service of summons and process has been insufficient; (3)[p]laintiff has failed to cite a Tribal ordinance or Tribal Court case law which supports his claim for relief; and (4)[p]laintiff has failed to state a claim upon which relief can be granted.” Defendants’ Motion to Dismiss, Page 1, lines 16-22.
Defendants base their motion on three subsections of CITC 620.120(12)(a): (1) “lack of jurisdiction over the subject matter”; (5) “insufficiency of summons or process or insufficiency of service of summons or process”; and (8) “failure to state ultimate facts sufficient to constitute a claim”. They challenge subject matter jurisdiction on the ground that sovereign immunity protects them from suit in this court. Plaintiff counters that defendants cannot claim immunity because the Tribe’s immunity from suit does not extend to them as tribal officials. Sovereign immunity is a matter of subject matter jurisdiction. Thomas v. Coquille Indian Tribe, et al, — Am. Tribal Law —,-, 2004 WL 5823303, *7-8 (Coquille Indian Tribal Court March 9, 2004); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 5.Ct. 1670, 1676-77, 56 L.Ed. 106 (1978). This court does not have subject matter jurisdiction to hear and decide claims brought against a defendant who is immune from suit, and “shall” dismiss the complaint as against a defendant who is immune. CITC 620.120(12)(g)(4). The court finds that the defendants and each of them are immune from suit in this court, and that the court therefore lacks jurisdiction to hear and decide plaintiff’s claims. The remaining grounds for dismissal are moot and the court abstains from ruling on them.
B.
The court reviews plaintiffs complaint “liberally with a view of substantial justice between the parties.” CITC 620.120(4)(a). The “substantial justice” test may be found in the civil pleading codes of multiple jurisdictions.[6] As noted by the United States Supreme Court, it is a “modification of the common law rule which construes all pleadings most strongly against the pleader.” Gillette v. Bullard, 87 U.S. 571, 20 Wall. 571, 22 L.Ed. 387 (1874). This court adheres to it and in ruling on defendants’ motion to dismiss for lack of jurisdiction over the subject matter *6 construes the allegations in the complaint favorably to the plaintiff, without compensating for pleading defects or allegations that are missing. See Thomas, supra, at -, 2004 WL 5823303, *4-8; Dawson v. Springer, — Am. Tribal Law -, -, 2003 WL 25906569, *1 (Coquille Tribal Ct. 2003) (“although the Court will make every favorable inference in order to uphold the sufficiency of a complaint, it will not compensate for pleading deficits.”) The court “disregard^ an error or defect in a [pleading] that does not affect the substantial rights of the [defendants]” [7] and does not disregard an error or defect that affects their substantial rights.[8]
C
The delegation to the Tribal Court in 1997[9] of “all judicial authority of the tribe” together with ordinances directing the court to apply the law of other jurisdictions in addition to the Tribe’s law[10] and permitting it to decline to hear a case if it “is of such a nature that the Tribal Court should not hear it”,[11] empower this court to exercise sound discretion in determining the contours of its jurisdiction. The court’s discretion is constrained by the law empowering it. This court, like any other, cannot invent itself and its judge, like any other
* * * is not a knight-errant roaming at will in pursuit of his own ideal of beauty or goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to “the primordial necessity of order in the social life”. Wide enough in all conscience is the field of discretion that remains.[12]
The court is bound to follow the Tribe’s constitutional and legislative law that empower it. This court derives its authority from Const. Art. VII § 4 and CITC 610.200(l)(a). Const. Art. VII § 4 provides:
POWERS. The tribal court and such inferior courts as the tribal council may from time to time ordain and establish shall be empowered to exercise all judicial authority of the tribe.
The judicial power of the tribal court shall extend to all cases and matters in law and equity arising under this constitution, the laws and ordinances of or applicable to the Coquille Indian Tribe and the customs of the Coquille Indian Tribe.
Provided that until such time as the tribal court is established, the judicial *7 authority of the Coquille Indian Tribe shall vest in the tribal council.
CITC 610.200(1) provides in relevant part:[13]
(a) Subject matter Jurisdiction. The Tribal Court shall have civil jurisdiction over cases and matters in law and equity arising under the following:
(1) Coquille Indian Constitution;
(2) Laws and Ordinances of the Tribe which contain express grants of jurisdiction to the Tribal Court;
(3) Customs of the Tribe;
(4) Indian Child Welfare Act, 25 U.S.C. 1 901 et seq.,
(5) Any other federal statutes that grant jurisdiction to Tribal Courts and;
(6) Appealable decisions of any committee, commission, board or authority of the Tribe.
In deciding the matter now before it the court is guided by well-reasoned federal court decisions outlining the parameters of federal court subject matter jurisdiction, which were decided under law similar to that of this Tribe. Thomas, supra, at-, 2004 WL 5823303, *3-5. “It is fundamental to our system of government that a court of the United States may not grant relief absent a constitutional or valid statutory grant of jurisdiction.” United States v. Bravo-Diaz, 312 F.3d 995, 997 (9th Cir.2002). “A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.” A-Z International v. Phillips, 323 F.3d 1141, 1145 (9th Cir.2003) (quoting United States v. Bravo-Diaz, 312 F.3d 995, 997 (9th Cir.2002)). See also Table Bluff Reservation, v. Philip Morris, Inc., 256 F.3d 879, (9th Cir.2001). “Unless a grant of jurisdiction over a particular case affirmatively appears, we are presumed to lack jurisdiction.” National Treasury Employees Union v. Federal Labor Relations Authority, 112 F.3d 402, 404 (9th Cir.1997).
D
Plaintiff alleges that the defendants violated his free speech and equal protection rights under Tribal law and the ICRA. Const. Art. VI § 11 provides:
The tribal council and other officials of the tribe shall not deny to any person within its jurisdiction freedom of speech, press or religion or the right of peaceful assembly. The tribal council and other officials of the tribe shall not deny to any person the equal protection of tribal laws or deprive any person of liberty or property without due process of law. The tribe shall provide to all persons within its jurisdiction the rights guaranteed by the Indian Civil Rights Act of 1968.
The ICRA conferred on individuals certain civil rights in their relations with Tribes, including freedom of speech, 25 U.S.C. § 1302(1), and equal protection of the laws. 25 U.S.C. § 1302(8). Santa Clara Pueblo, supra, 436 U.S. at 64, 98 S.Ct. 1670 (citation omitted). The Coquille Indian Tribe’s incorporation into its Constitution of ICRA civil rights generally and free speech and equal protection specifically surely gives rise to rights. At issue is whether there is a remedy for these rights in this court.
Const. Art. VII Section 4 (“The judicial power of the tribal court shall extend to all cases and matters in law and equity arising under this constitution”) and CITC 610.200(l)(a) (“The Tribal Court shall have civil jurisdiction over cases and *8 matters in law and equity arising under the * * *(l)Coquille Indian Constitution”) are read in conjunction with the CITC 610.999. It provides:
Nothing in this Ordinance shall be construed to have waived the sovereign immunity of the Coquille Indian Tribe. Notwithstanding any other provisions of [Ch. 610], the Tribal Court shall not have jurisdiction over the Tribal Council or the officers of the Tribal Council, no matter what form of relief is sought, unless the Tribal council, by resolution or ordinance, has expressly and explicitly waived its sovereign immunity for a particular action.
The Tribal Council has constitutional authority to “ordain and establish” the Tribal Court. Const. Art. VII § 4. As explained in part E, below, it has the authority to protect the Tribe’s sovereign immunity to suit in any court including this court, and to determine the extent, if any, to which that immunity may be waived or extended. The Tribal Council has not waived the Tribe’s immunity to suit in this court for any purpose relevant to plaintiffs claims, and in particular has not waived sovereignty for violation of free speech, equal protection and ICRA rights. By contrast, it has affirmed the Tribe’s immunity and extended immunity to itself and its officers through legislation. CITC 610.999. It has expressly provided for no waiver of the immunity of the Election Board and its officers and representatives. CITC 194.300. It has by legislation created the exclusive means for any future waiver of sovereign immunity. CITC 190.170 (“Any waiver of the Tribe’s sovereign immunity must be explicitly made by the Tribal Council, by resolution, and the terms and conditions of such waiver explicitly set forth in such resolution.”) No constitutional provision, ordinance or other authority identified by the parties or located by this court supersedes or indicates invalidity of any of these measures. For these reasons, this court holds that it lacks subject matter jurisdiction over the claims alleged by plaintiff against the defendants and each of them. Thomas v. Coquille Indian Tribe, et al, — Am. Tribal Law at -, 2004 WL 5823303, *7-8 (Coquille Tribal Ct. March 9, 2004); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1676-77, 56 L.Ed. 106 (1978).
E
The Coquille Indian Tribe’s law preserving and extending sovereign immunity is in keeping with well-settled legal doctrine that (1) Indian tribes are not subject to suit in any court unless the Tribe or the United States Congress has waived the Tribe’s immunity to suit; (2) waiver of sovereign immunity must be unequivocally expressed and not implied; and (3) tribal immunity extends to tribal officials acting in their representative capacity and within the scope of their authority.
As the United States Supreme Court has summarized the law, Indian tribes are “ ‘distinct, independent political communities, retaining their original natural rights’ in matters of local self-government.” Santa Clara Pueblo, supra, at 55, 98 S.Ct. 1670, quoting Worcester v. Georgia, 31 U.S. 515, 6 Pet. 515, 559, 8 L.Ed. 483 (1832), and citing United States v. Mazurie, 419 U.S. 544, 557, 95 S.Ct. 710 717, 42 L.Ed.2d 706 (1975) and F. Cohen, HANDBOOK OF FEDERAL INDIAN LAW 122-123 (1945). “Although no longer ‘possessed of the full attributes of sovereignty,’ they remain a ‘separate people, with the power of regulating their internal and social relations,’ ” Santa Clara Pueblo, supra at 55-56, 98 S.Ct. 1670, quoting United States v. Kagama, 118 U.S. 375, 381-382, 6 S.Ct. 1109, 1112-1113, 30 L.Ed. *9 228 (1886). “They have power to make their own substantive law in internal matters (citations omitted) and to enforce that law in their own forums, see, e.g., Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959).” Santa Clara Pueblo, supra at 55-56, 98 S.Ct. 1670. “Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.” Santa Clara Pueblo, supra at 58, 98 S.Ct. 1670 (citations omitted). Absent Congressional action, State of Montana v. Gilham, 133 F.3d 1133, 1136 (9th Cir.1998) (citing Santa Clara Pueblo, supra), or tribal consent to suit, “state and federal courts have no jurisdiction over Indian tribes; only consent gives the [federal] courts the jurisdictional authority to adjudicate claims raised by or against tribal defendants.” Pan Am. Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 418 (9th Cir.1989).
The Supreme Court has repeatedly held that Indian tribes are subject to suit only where Congress has authorized the suit or the tribe has waived its sovereign immunity. See Nez Perce Tribe v. Idaho Power Co., 847 F.Supp. 791, 806 (D.Idaho 1994), citing Kiowa Tribe of Oklahoma v. Manufacturing Technologies, 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998); Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, 476 U.S. 877, 890, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (Suits against Indian tribes are barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation); Oklahoma Tax Com’n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (Suits against tribes are barred by sovereign immunity absent clear waiver by tribe or congressional abrogation); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) “A waiver of sovereign immunity for Indian tribes ‘cannot be implied but must be unequivocally expressed.’ ” Id. (citation omitted). These cases do not contemplate that a Tribe can execute an express waiver solely by violating a statute or arguably acting beyond the scope of its sovereign powers.
In Santa Clara, Puebla, a female member of the tribe and her daughter challenged a tribal ordinance that denied tribal membership to the children of a female member who married outside the tribe. The plaintiffs relied on 25 U.S.C. § 1302(8), the right to equal protection of the laws. Noting that a waiver of sovereign immunity “cannot be implied but must be unequivocally expressed,” the Court found nothing in the ICRA which “purports to subject tribes to the jurisdiction of the federal courts in civil actions for injunctive or declaratory relief.” Id. at 58-59, 98 S.Ct. at 1677. As the Santa Clara Pueblo court noted, “Tribal forums are available to vindicate rights created by the ICRA, and § 1302 has the substantial and intended effect of changing the law which these forums are obliged to apply. Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians.” Id. at 66, 98 S.Ct. 1670. Because waiver of sovereign immunity “‘cannot be implied but must be unequivocally expressed’ ”, United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), quoting, United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969), the Court emphasized that this modification by itself could not be interpreted as a waiver of the immunity from suit traditionally enjoyed by sovereign powers. Santa Clara Pueblo, supra, 436 U.S. at 57-59, 98 *10 S.Ct. at 1676-77. In accord is Nero v. Cherokee Nation of Oklahoma, 892 F.2d 1457, 1460 (10th Cir.1989), where the court held:
Nor are we persuaded * * * that the Cherokee Constitution waives the Tribe’s immunity to suit under the ICRA. * * * Plaintiffs urge us to construe language in the Cherokee Constitution providing that ‘the appropriate protection guaranteed by the OCRA shall apply to all members of the Cherokee Nation’ * * * as such an express waiver. The cited language no more constitutes an unequivocal expression of waiver than does the language of the ICRA, which itself created the substantive rights supposedly guaranteed to all members of the Cherokee Nation, language which the Supreme Court refused to interpret as a waiver.
Like other tribes, the Coquille Indian Tribe remains a “separate people, with the power of regulating their internal and social relations.” Santa Clara Pueblo, supra at 55-56, 98 S.Ct. 1670 (citation omitted). Its sovereign immunity “is an amalgam of two quite different concepts, one applicable to suits in the sovereign’s own courts and the other to suits in the courts of another sovereign.” Nevada v. Hall, 440 U.S. 410, 414, 99 S.Ct. 1182, 1185, 59 L.Ed.2d 416 (1979), cited at Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 760, 118 S.Ct. 1700, 1706, 140 L.Ed.2d 981 (1998) (Stevens, J. dissenting, joined by Thomas, J. and Ginsburg, J.) “In the former category, the sovereign’s power to determine the jurisdiction of its own courts and to define the substantive legal rights of its citizens adequately explains the lesser authority to define its own immunity.” Kiowa Tribe of Oklahoma, supra 523 U.S. at 760, 118 S.Ct. 1700, citing Kawananakoa v. Polyblank, 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834 (1907).
Federal decisions uphold the extension of “tribal immunity’ to individual tribal officials acting in their representative capacity and within the scope of their authority,” regardless of whether the extended immunity is granted by tribal legislation. Hardin v. White Mountain Apache Tribe, 779 F.2d 476, 478-79 (9th Cir.1985); United States v. Oregon, 657 F.2d 1009 n. 8 (9th Cir.1981); Wright v. Colville Tribal Enterprise Corp., 159 Wash.2d 108, 147 P.3d 1275 (2006). See also Tenneco Oil Co. v. Sac & Fox Tribe of Indians, 725 F.2d 572, 574 (10th Cir.1984); Romanella v. Hayward, 933 F.Supp. 163, 167 (D.Conn.1996). Of course, tribal sovereign immunity would not protect an individual defendant sued in his individual capacity, see Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 360 (2nd Cir.2000), nor would it protect one who acted outside the scope of his authority. White Mountain Apache Indian Tribe, 480 P.2d at 658 (holding tribal sovereign immunity protects officers from suit in official but not individual capacity). Plaintiff has not alleged that any of the persons named in the complaint acted outside the scope of their authority, nor does he sue them in their individual capacity.
The parties point to no authority discrediting the reasoning of the decisions above and the court has found none. The court finds the authorities persuasive and consistent with the Coquille Indian Tribe’s laws of sovereign immunity. Plaintiff cites decisions of other tribe’s courts for the proposition that “the ICRA does waive the tribe’s sovereign immunity from suit in tribal court for violations of that act.” [14] The court does not find those decisions to be persuasive. They were decided under *11 tribal laws and precedent materially different from those of the Coquille Indian Tribe. Several are dc facto court-imposed waivers of tribal sovereign immunity. One of them interprets Santa, Clara Pueblo to mean that because ICRA does not waive immunity to suit in federal court, it is a waiver to suit in tribal court and tribes must furnish a remedy in their courts. See Works v. Fallon Paiute-Shoshone Tribe, 24 Indian L. Rep. 6078, — Am. Tribal Law-, 1997 WL 34704273 (Nev. Inter-Tribal C.A.1997). Neither that conclusion nor its rationale is to be found in Santa Clara Pueblo, and other tribal courts have reached contrary conclusions. See Winnebago Tribe of Nebraska v. Bigfire, 24 Indian L. Rptr. 6232 (Winnebago Tribal Court) (An express waiver of tribal immunity is necessary before an ICRA claim may be brought in tribal court.) The ICRA does not provide for a remedy in the courts of tribes. As the authorities that this court finds persuasive make abundantly clear, only Congress and a tribe can waive sovereign immunity. The Coquille Indian Tribe has vested the power to waive sovereign immunity in its Tribal Council and not in its Tribal Court. CITC §§ 610.999 and 190.170.
Some tribes have enacted far-reaching waivers of sovereign immunity. The parties may find it useful to examine the law of one such tribe. Title XX of the Mash-antucket Pequot Civil Rights Code is an extensive statutory scheme that creates civil rights and specific remedies and procedures to vindicate those rights in the Mashantucket Tribal Court. It “unequivocally and expressly” waives immunity and clearly sets out what defendants can and cannot be names in a suit. It is attached to this opinion as Appendix A for comparative and illustrative purposes.
F
For reasons set forth above, the court will enter an order granting defendants’ motion to dismiss for lack of subject matter jurisdiction. In granting defendants’ dismissal motion, the court must consider whether to allow plaintiff to re-plead. If the jurisdictional allegations are not sufficient and plaintiff cannot truthfully amend to allege jurisdiction, the court should dismiss the matter without leave to re-plead. Thomas, supra at -, 2004 WL 5823303, *10-11; Chais-Shulman v. Bank of America Trust No. 54212, 456 F.2d 253 (9th Cir.1972) cert. denied, 409 U.S. 864, 93 S.Ct. 155, 34 L.Ed.2d 111 (1972). Because the court finds it lacks subject matter jurisdiction on grounds of sovereign immunity, plaintiff cannot truthfully amend to allege jurisdiction. Therefore, the complaint will be dismissed with prejudice. Thomas, supra at -, 2004 WL 5823303, *10-11.
G
The Coquille Indian Tribe’s law includes an ordinance authorizing a candidate to challenge election results. CITC Ch. 194 as amended August 6, 2008 (the Elections Ordinance) §§ 194.010-194.300 governs the appointment of the Election Board by the Tribal Council and sets out the Election Board’s responsibilities and authorities. CITC 194.160 provides that a candidate can challenge election results through timely complaint to the Election Board. It provides procedures for appeal to the Tribal Court if the candidate disagrees with the outcome of the challenge. In his complaint plaintiff does not claim to have complied with these provisions, nor does he allege that he seeks this remedy. But he includes with his brief response to motion to dismiss and supporting materials filed with this court March 20, 2009, Exhibits “14” and “13”. The court attaches them to this opinion as, respectively, Ap *12 pendices B and C. Appendix B is plaintiffs letter to the Election Board challenging the results of the 2008 election and Appendix C is the Election Board’s October 29, 2008 letter denying the challenge together with response. These Appendices can be interpreted as expressing an intent to appeal to the Tribal Court under the Elections Ordinance.
These documents were received into the court’s record in the course of the submission of materials in the course of a non-facial [15] challenge to the sufficiency of plaintiffs complaint. Under the circumstances and taking into account that plaintiff is self-represented, and in keeping with this court’s discussion, supra, regarding liberal interpretation of pleadings with a view of substantial justice between the parties, the court finds that it is in the interest of justice to provide plaintiff the opportunity for an appeal under CITC Ch. 194 as amended August 6, 2008. He shall file a notice of appeal in proper form with this court if he wishes to pursue this remedy. If the appeal is timely and comports with the law, the effective date of its filing shall relate back to October 30, 2008, the date of the filing of the complaint.
APPENDIX A
TITLE XX MASHANTUCKET PEQUOT CIVIL RIGHTS CODE
CHAPTER 1
Section 1. Civil Rights
a. The Tribe shall not:
(1)make or enforce any law prohibiting the free exercise of religion or abridging the freedom of speech, or of the press, or the right of the people to peaceably
assemble and to petition for a redress of grievances;
(2) violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures, nor issue warrants, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized;
(3) subject any person for the same offense under tribal law to be twice put in jeopardy;
(4) compel any person in any criminal case to be a witness against himself or herself;
(5) take any private property for a public use without just compensation;
(6) deny to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him or her, to have compulsory process for obtaining witnesses in his or her favor, and at his or her own expense to have the assistance of counsel for his or her defense;
(7) require excessive bail, impose excessive fines, inflict cruel and unusual punishments, and in no event impose for conviction of any one offense any penalty or punishment greater than imprisonment for a term of one year and a fine of $5,000 or both;
(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;
(9) pass any bill of attainder or criminal ex post facto law; or
*13 (10) deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury of not less than six persons.
b.The tribal court shall interpret the rights enumerated under this Title in a manner that is consistent with tribal custom, practice and tradition. The tribal court is not bound by interpretations by state and federal courts of similar language found in state and federal constitutions.
Section 2. Jurisdiction and Waiver of Sovereign Immunity From Suit
a. The tribal court shall have jurisdiction over claims alleging a violation or violations of the rights enumerated under Section 1 of this Title.
b. The Tribe hereby expressly waives its sovereign immunity from suit in the tribal court for claims against the Tribe alleging a violation(s) of the rights enumerated in Section 1, as provided for and defined in this Title. Nothing herein shall be construed as a waiver of the sovereign immunity of the Tribe from suit in state or federal court or in any action before any state or federal agency, or in any other forum or context.
c. There shall be no cause of action in the tribal court under this Title relating to, or which may affect, activities of the Elders Council or Peacemakers Council.
d. There shall be no cause of action in the tribal court under this Title relating to, or which may affect, the Tribe’s Indian Preference Policy.
Section 3. Claims Against the Tribe
a. Claim. Any person, whether a tribal member or non-member, may bring an action against the Tribe for violations of the rights enumerated in Section 1 of this Title.
b. Tribe as Defendant. Claims under this Title shall be brought only against the Tribe and there shall be no separate cause of action against any division, agency, committee, office, entity or instrumentality of the Tribe, or against any officer, agent, servant or employee of the Tribe; provided that, an action against the Tribe may be based upon the actions of an officer, agent, servant or employee of the Tribe or of a division, agency, committee, office, entity or instrumentality of the Tribe, including the Gaming Enterprise.
c. Complaint. A claim brought under this Title shall be brought by the filing of a complaint which complies in all aspects with the Mashantucket Pequot Rules of Civil Procedure and which also shall allege, with specificity, the following:
(1) the act or acts which resulted in the violation of rights enumerated in Section i;
(2) the date or dates of the alleged violation(s);
(3) the specific acts which resulted in the alleged violation and the officer, agent, servant, or employee or, the division, agency, committee, office, entity or instrumentality of the Tribe which committed or is alleged to be responsible for such acts;
(4) the specific right or rights which have been violated with citations to the section or sections of this Title; and
(5) the date on which the Notice of Claim, required under Section 3(d) of this Title, was filed with a copy of the Notice of Claim attached to the complaint.
d. Notice of Claim. Claims brought under this Title shall be preceded by a written notice of claim filed with the tribal clerk by the claimant or the claimant’s representative within 180 days after the claim accrues. Claims are deemed to accrue on the date of the alleged violation of *14 rights under this Title. The Notice of Claim shall contain the following information: (i) the name and address of the claimant and the name and address of the claimant’s attorney, if any; (ii) a concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the alleged violation(s) of right(s) complained of; (iii) a concise statement of the nature and extent of the injury claimed to have been suffered; (iv) a statement of the amount of monetary damages that is being requested and whether declaratory relief is being requested; and (v) the name of any officer, agent, servant, employee or the division, agency, committee, office, entity or instrumentality of the Tribe involved, if known.
e. Awards. In a judgment under this Title, the court may enter an award as follows:
(1) The court may enter an award for actual damages resulting from a violation of the rights enumerated in Section 1 of this Title.
(2) In addition to an award of actual damages, the court may enter an award for pain and suffering or mental anguish provided that, in no event shall the total award of actual damages plus pain and suffering for injuries arising from the set of facts and circumstances alleged in the complaint exceed the amount of $250,000.
(3) Attorney’s fees may be awarded in the discretion of the court to the prevailing party against the Tribe only when the court determines that the action(s) of the Tribe were wholly unreasonable and particularly egregious. If the Tribe is the prevailing party, the court shall award attorney’s fees only upon a finding that the plaintiffs claim is frivolous, unreasonable or without foundation in the law or fact. An award of attorney’s fees must be supported by contemporaneous records of hours billed and the billing rate(s) charged which must be consistent with prevailing billing rates of attorneys practicing before the tribal court. In no event shall an award of attorney’s fees exceed 25% of the total damage award.
(4) The court may enter a judgment for declaratory relief.
(5) The court shall not enter any other award or judgment under this Title, including:
(a) no award based upon any rule of law imposing absolute or strict liability;
(b) no award or other judgment imposing punitive or exemplary damages;
(c) no award based upon a claim for loss of consortium; and
(d) no award, order or judgment for injunctive relief, whether restraining action or commanding positive action be taken.
f. Statute of Limitations. No claim under this Title shall be brought but within one year from the date of the violation(s) of right(s) complained of.
Section 4. Miscellaneous
a. All actions against the Tribe shall be tried to the court and not to a jury. No costs shall be taxed against the Tribe.
b. In all actions where it is alleged that the liability of the Tribe is based upon the action of an officer, agent, servant, or employee acting within the scope of his or her employment there shall be no separate cause of action against the officer, agent, servant or employee. Nothing in this Law shall be construed to waive the sovereign immunity of the Tribe to the extent that sovereign immunity would be applicable to such individual.
*15 Section 5. Application of Law
This law shall be applicable to claims accruing after the enactment date. For claims arising prior to the enactment of this law or pending in the tribal court on the date of enactment, there shall be no cause of action recognized under tribal law, except as provided in Section 6 of this Title.
Section 6. Repeal of Prior Law
The sections of tribal law entitled “Indian Civil Rights Act” and “Waiver of Tribal Sovereign Immunity” contained in the tribal law concerning the criminal court, formerly codified at Title I, Chapter 3, Sections 10 and 11 of the Mashantucket Pequot Tribal Laws, are hereby repealed and are of no further force and effect, except that: (a) any claims alleged pursuant to those sections, and which are pending in the tribal court on the date of the enactment of this Title, shall be recognized as claims under this Title; and (b) any claim pursuant to those sections, which accrued within one year prior to the enactment of this law, may be brought under this Title by filing the notice and complaint required hereunder within 180 days after the enactment of this Title.
LEGISLATIVE HISTORY—MASHAN-TUCKET PEQUOT CIVIL RIGHTS CODE AND FOR AMENDMENTS TO TITLE VIII. EMPLOYMENT REVIEW CODE
I. Introduction
Civil rights or civil liberties, in the context of state and federal law, mean “personal, natural rights guaranteed and protected by Constitution,” including freedom of speech, free exercise of religion, freedom from discrimination or the unequal treatment under the law based upon race, gender, age, religion, etc. In the state and federal constitutions, most of the rights and liberties guaranteed to individuals are defined in terms of restraints on the government. The state and federal constitutions do not restrict or restrain action by tribal governments, since tribes pre-date these constitutions and do not derive their sovereignty from either the state or federal governments—tribes being inherently sovereign.
In 1968, Congress enacted the Indian Civil Rights Act, 25 U.S.C. § 1301-1303 (the “ICRA”), which imposes restraints on Indian tribes when “exercising powers of self-government.” The ICRA, also called the Indian Bill of Rights, is similar but not identical to the Bill of Rights (the first ten amendments to the federal Constitution) in the U.S. Constitution.
In Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), the U.S. Supreme Court reviewed the ICRA and found that the only type of claim an individual could pursue in the federal courts to enforce the rights enumerated in the ICRA was under the habe-as corpus provision. An individual may bring a claim under the habeas provision to “test the legality of detention by order of an Indian tribe.” 25 U.S.C. § 1303. Other than challenging an order of detention by an Indian tribe, an individual who believes that his or her rights have been violated by the action of a tribal government may not bring suit against the tribal government in federal (and certainly not in state) court. However, in Santa Clara Pueblo, the U.S. Supreme Court stated that “tribal forums are available to vindicate rights created by the ICRA and [25 U.S.C.] § 1302 has the substantial and intended effect of changing the law which these forums are obliged to apply.” Id. at 65, 98 S.Ct. 1670.
Tribes have addressed civil rights in different ways. Some tribes have ineorporat- *16 ed the enumerated rights in the ICRA (some in a modified fashion) in a tribal constitution (examples include: Poarch Band of Creek Indians, Menominee Tribe, Gay Head Warnpanoag Tribe), while others have adopted laws addressing civil rights. Tribal courts have come to different conclusions concerning whether an individual may sue an Indian tribe in tribal court pursuant to the ICRA, or whether the tribe must expressly waive its immunity from suit in the tribal court for claims under the ICRA. For example, in Winnebago Tribe of Nebraska v. Bigfire, 24 Indian L. Rptr. 6232 (Winnebago Tribal Ct.1997), the court opined that an express waiver of tribal immunity is necessary before an ICRA claim may be brought in tribal court, while the Inter-Tribal Court of Appeals of Nevada has determined that a civil rights action could proceed in the tribal court because the ICRA constituted a waiver in the tribal forum. See Works v. Fallon Paiute-Shoshone Tribe, 24 Indian L. Rptr. 6078 (Inter-Tribal Court of App., Nev.1997).
Presently, the Mashantucket Pequot Tribal Laws do not affirmatively protect an individual’s rights vis-á-vis tribal governmental action, with the exception of a provision in Title I addressing actions by the tribal police. See I M.P.T.L. ch. 3, Sections 10 & 11. In a chapter addressing the court’s jurisdiction over criminal matters, the law adopts the Indian Civil Rights Act and states that it shall be applied in tribal court. That provision also contains a waiver of sovereign immunity but only for an “action taken by the tribal police alleging a violation of the Indian Civil Rights Act provided the alleged violation occurred within the nation lands.” The limitation of awards under this waiver is set at a total award of $500,000, per incident and the III. Law prohibits any award for punitive damages, for loss of consortium, and limits an award for pain and suffering to 50% of the award for actual damages, all similar to the tort law originally enacted.
To date, there have been no claims brought in the tribal court against the tribal police under this provision. However, litigants and the court have used these provisions to incorporate the ICRA into other areas, and to provide a forum for claims against the Gaming Enterprise particularly in the employment context.
The Mashantucket Pequot Civil Rights Code is being adopted as a new title of the Mashantucket Pequot Tribal Laws to address civil rights of individuals as they relate to the tribal government and the various entities organized as arms of the tribal government. In passing this Code, the Tribal Council recognizes the rights of individuals and provides a cause of action in the Mashantucket Pequot Tribal Court to enforce these rights.
II. Section by Section Analysis Of Civil Rights Code
1. Section L Civil Rights
Section 1 of the Tribal Civil Rights Code provides an enumeration of rights which is similar, but not identical to those provided in the Indian Civil Rights Act. One difference is the insertion of the word “criminal” before “ex post facto” in Section 1(a)(9). This change is meant to clarify that this prohibition is relevant only in the criminal context and does not apply in the civil context. In addition, the words “under tribal law” have been inserted in Section 1(a)(3) (concerning double jeopardy) to clarify that this pertains to prosecutions under tribal law and would not pertain to prosecutions by separate sovereigns, such as the federal government and tribal government.
*17 The enumerated rights are framed as a prohibition against the Tribe taking action, such as making or enforcing any law prohibiting the free exercise of religion or abridging the freedom of speech. The one significant difference between Section 1 of the Tribe’s Civil Rights Code and the ICRA is that the proposed law does not contain the language “when exercising powers of self-government,” which the ICRA does contain. The ICRA provides that the tribe shall not do certain enumerated things, when exercising powers of self-government and self-government is defined in the ICRA. The tribal law offers broader protections to individual rights because it does not contain this language. This language was deleted in order to make clear that this law would cover claims based upon alleged actions taken by the Gaming Enterprise or the Museum and Research Center for example, such as a discrimination claim by an employee. Although the Gaming Enterprise and the Museum are arms of tribal government, there may be confusion or disagreement concerning whether actions taken by these entities would or their officers, agents and employees would be covered as exercises of “self government,” which is generally understood to encompass legislative and judicial acts of the tribal government, but may not necessarily include actions taken by an arm of tribal government.
Section 1 of this law also contains a provision directing the tribal court to interpret this law in a manner which is consistent with tribal custom, practice and tradition. The Tribal Council expressly has provided that the tribal court shall not be bound by interpretations of similar language by state and federal courts, leaving the tribal court free to interpret these provisions under tribal law.
2. Section 2. Jurisdiction and Waiver of Sovereign Immunity From Suit
Section 2 provides an express grant to the court of jurisdiction over the defined civil rights claims and provides a waiver of the Tribe’s sovereign immunity for such claims. Additionally, this Section expressly states that this law does not create a cause of action which would affect actions of the Elders Council or the Peacemakers Council, which is intended to give deference to the decisions of those forums. It is not the intent of Council to provide a cause of action allowing challenges to the decisions of the Elders or Peacemakers Council pursuant to this Law. Section 2(d) clarifies that this law does not provide any cause of action based upon the Tribe’s Indian preference policy. This provision was added to clarify that the “equal protection” of tribal laws provided for in Section 1(a)(8) does not affect or modify, in any manner, the Tribe’s policies and laws concerning Indian preference, and the enforcement of the Indian preference policy shall not be considered a violation of any rights enumerated in this law and shall not form the basis of any action under this law.
3. Section 3. Claims Against The Tribe
Section 3 describes how the claim may be brought under this Title. This Section specifies that the claim may be brought only against the Tribe and cannot be brought against a separate arm, agency, department or subdivision of the Tribe or against an officer, agent or employee of the Tribe or of an arm, agency, department or subdivision. Further, this Section specifies the information that must be contained in a complaint to commence the action in tribal court; requires that a Notice of Claim be filed within 180 days after the claimed violation of rights occurred; *18 and describes the type of awards which the court may enter.
More particularly, the law allows the court to enter an award of money damages for actual damages incurred and an award for pain and suffering; however, the law limits the total award for actual damages and pain and suffering to $250,000. However, this total limitation of $250,000 is intended to cover any claims relating to a set of facts and circumstances which form the basis of the claim. It is not the intent to allow $250,000 for each claimed violation of rights under this Title. Therefore, if one set of facts and circumstances allegedly gives rise to several alleged violations of rights, the total recovery is limited to $250,000.
This law allows the court to award attorneys’ fees to the prevailing party. However, the standard that a party must meet in order for the court to make such an award is difficult. To award attorney’s fees against the Tribe, a party must show that the Tribe’s action was “wholly unreasonable and particularly egregious,” and if a plaintiffs claim is “frivolous, unreasonable or without foundation in the law or fact,” the court may award attorney’s fees against a plaintiff and in favor of the Tribe.
Similar to tribal law for torts against the Tribe, Title XII (Civil Actions Law), a claimant must bring his or her claim within one year after the violation of rights occurred, while maintaining a requirement that the plaintiff file a notice of claim within 180 days of the violation. It is intended that this notice requirement and statute of limitations be strictly construed and be interpreted as a substantive, rather than a procedural, requirement.
The law provides that the court may order declaratory relief, but prohibits an order or award for injunctive relief. In-junctive relief expressly includes both an order to take positive action and orders restraining action. Similar to provisions in Title IV (Tort Law/Gaming Enterprise) and Title XII (Civil Actions Law), the court may not enter awards based upon strict or absolute liability theories; or to impose punitive or exemplary damages; or for loss of consortium claims.
4. Section 4. Miscellaneous
Section 4, called “Miscellaneous,” provides that actions against the Tribe under this law must be tried by the court (a judge) and not a jury; no costs shall be assessed against the Tribe; and suits in which a claimant is complaining about the action of an officer, agent, servant or employee acting within the scope of employment, the claimant cannot bring an action against the individual. These provisions are identical to provisions in tribal law addressing tort and contract claims.
5. Section 5. Application Of Law
Section 5 states that this law shall apply only to claims arising after its enactment date and does not provide for a cause of action if the violation of rights occurred prior to the enactment of the law. This applies even if a claimant has a pending action in the tribal court. The only exception made to this rule (in Section 6 of the proposed law) is if a claimant has an action pending in the tribal court pursuant to the present tribal law regarding civil rights claims against the tribal police, or if such a person has a claim against the tribal police which arose within one year prior to the enactment of the law. In that case, such a claimant could pursue the claim under this title. If there is such a claim, the claimant must file a notice of claim and a complaint within 180 days after the enactment of the law.
*19 6. Section 6. Repeal of Prior Law
Section 6 also repeals the prior law concerning the tribal police, since those types of claims would now be governed by this Title.
The issue of an individual’s rights, whether a tribal member or nonmember, in relation to the Tribal government is an important issue throughout Indian country. A review of decisions in the Indian Law Reporter and of commentaries by legal scholars demonstrates the complexity of the issues and the struggle within Indian communities to address these issues in a manner consistent with the community’s practices, customs and traditions. Much of the debate or controversy focuses on whether the ICRA, a law imposed upon tribes by Congress, is enforceable in tribal courts and the interpretation of its provisions. One theme running through much of the commentary and some of the decisions is that tribes themselves must address these issues either through the enactment of tribal law or inclusion of rights within tribal constitutions. The concern is that if the tribes do not affirmatively address the issue of civil rights, Congress may review the issue again and impose legislation more intrusive on tribal sovereignty.
At Mashantucket, the only tribal law that specifically had addressed civil rights concerned the Tribal Police. However, ICRA claims and issues have been raised by litigants in tribal court in matters involving employment actions at the Gaming Enterprise. For example, in the Johnson case, the court ruled that the ICRA required the Gaming Enterprise to allow employees to be represented by counsel in the Board of Review process. That case arose in the context of Title VIII Employment, governing the tribal court’s review of final decisions by the President/CEO of the Gaming Enterprise and the chief human resources officer. From that decision, the court expanded into independent claims of ICRA violations in several other cases. The adoption of a tribal law addressing civil rights claims allows the Tribal Council to define the rights and the remedies afforded in tribal court.
III. Amendments to Title VIII Employee Review Code
The Tribal Council is aware of litigation in the employment context concerning civil rights. Within the employment context, the tribal court has discussed rights such as due process and equal protection. In most cases, these claims have been brought pursuant to Title VIII. Employment, which provides an appeal process from a final decision regarding disciplinary actions, including terminations from employment. Many of these decisions have addressed civil rights through a discussion of the Indian Civil Rights Act. The Tribal Council, in connection with the enactment of the Tribal Civil Rights Code, has determined that it is necessary to amend Title VIII to allow for claims concerning violations of “procedural due process rights” in the employment context. The amendments add new subsections (d), (e), and (f> to Section 3 of Title VIII. These new subsections provide that an employee who has progressed through the Board of Review process and has received a final decision from the President/CEO or from the chief human resources officer, may seek a review in tribal court of what an employee claims to be a violation of procedural due process rights, as that term is defined in the law.
The new subsection 3(d) provides that an employee may seek review of a violation of procedural due process rights in an appeal brought under Title VIII, but in order to do so, the employee must allege *20 such a claim in the Notice of Appeal and provide the information as described in subsection 3(d), This requirement is mandatory and an employee should not be allowed to pursue such claims unless the information required is provided.
In subsection 3(e), the law states that the tribal court may only review, under Title VIII, whether an employee’s procedural due process rights were violated, and may not consider any other claimed violation of civil rights in an Appeal under Title VIIL Any claim alleging a violation of rights, other than procedural due process rights, must be pursued under the new Civil Rights Title.
Subsection 3(f) defines “procedural due process rights” to mean the right to adequate notice, a meaningful opportunity to be heard, and the right to representation at the employee’s option and expense. These rights have been generally recognized by the tribal court in the employment context.
It is the intent of the Council in adopting these amendments to specifically provide employees with the right to raise issues of procedural due process in the Board of Review process within the context of an Appeal. At the same time, the Council recognizes that in order to make such a claim, the employee must provide detailed information in the Notice of Appeal, describing the claimed violations. It is also the intent to give the employee an opportunity to raise all issues concerning the Disciplinary Action in the Appeal, without the necessity of commencing a separate action under a separate title.
Legislative History. Derivation. Effective October 12, 2000-TCR101200-04 enacted the “Civil Rights Code.”
PLAINTIFF’S EXHIBIT “14”
Coquille Indian Tribe
Tribal Council
P.O. Box 783
3050 Tremont North Bend, Oregon 97459
I hereby submit this written request to the Tribal Council of the Coquille Indian Tribe, for a resolution, granting me access to contact information for all eligible voters of the Coquille Indian Tribe; in order that I might exercise my constitutionally protected rights as a member of the General Council under Article IV, Section 2 of The Constitution of the Coquille Indian Tribe.
While I appreciate the right to privacy of individual tribal members; as members of the General Council, they have inherent responsibilities of governance. In that capacity, I have the right to contact them under Article IV, Section 2 of the constitution.
The Tribal Council may either grant or reject this request for a resolution granting me access to current contact information for all eligible voting members of the Coquille Indian Tribe General Council.
As explained to me by legal council, I understand that I have the option of pursuing this matter in Tribal Court if this request is denied
respectfully,
Brady C. Metcalf
Tribal Roll # 677
*21 [[Image here]]
*22 [[Image here]]
*23 detune
3. Election Rule 08-01 was presented to Tribal Council on September 11,2008, as required by the Elections Ordinance, Coquille Indian Tribal Code Chapter 194.
4. Election Rule 08-01 was applied evenhandedly to all candidates running for Tribal Council office in 2008.
5. Brady Metcalf submitted materials for the Tribal Voter Information Pamphlet that were excluded by Election Rule 08-01. Mr. Metcalf had included a Referendum Petition in his election materials. The Referendum Petition was excluded! from the Voter Information Packet, on the decision of the Election Board thit a referendum effort and an election campaign were separate issues, and could not be combined in the Voter Information Pamphlet.
6. All candidates for office were provided with a directory. Candidates were requited to sign a notarized oath stating that they would use the list of General Council pames, addresses, and phone numbers (a) use the directory exdusiyjjiy for the purpose of that year’s campaign for Tribal Council, (b) will makfc no copies of the directory, and (c) will destroy the directory immediately after conclusion of the election.
7. Mr. MetqalPs signed oath was not received prior to his receipt of his directory( Mr. Metcalf did return his signed oath, but it was not notarized.
8. Mr. Metcalf mailed his Referendum Petition, which was excluded from the Voter Information Packet, on at least one occasion using the addresses providedibv the Election Board under Finding 6 above.
Findings of Facts anil Conclusions of Law Page 2 of 3
(UUpewit TT> lUfewrs ¾
*24 [[Image here]]

. The members of the Tribal Council are Ken Tanner, Edward L. Metcalf, Thomas H. Younker, Toni Ann Brend, Judy Rocha, Sharon Parrish and Cassie Ross.

. The members of the Election Board are Jon Ivy, Julie Chouqucttc and Linda Robertson.

. Indian Civil Rights Act of 1968, 25 USC §§ 1301-1303.

. The court has thoroughly reviewed the parties' submissions and the entire record in this case, and has conducted additional research. Parties’ submissions and procedural history of the case: October 30, 2008 plaintiff filed his complaint. March 3, 2009 defendants filed their motion to dismiss the complaint and supporting memorandum. March 20, 2009 plaintiff filed his brief response to motion to dismiss and supporting materials. April 3, 2009 defendants filed their reply to plaintiff's memorandum in opposition to motion to dismiss and supporting materials. April 2 i, 2009 the court heard oral arguments on defendants' motion to dismiss. April 24, 2009 the court entered orders on oral motions and the order for supplemental briefing and ami-cus curiae briefing. May 7, 2009 defendants filed their supplemental memorandum supporting motion to dismiss complaint. May 21, 2009 plaintiff filed his supplemental brief. May 28, 2009 defendants filed their reply brief and supplemental memorandum supporting motion to dismiss complaint.

. A special appearance is a procedure that allows a defendant to challenge jurisdiction and sufficiency of service of process without submitting to the court's jurisdiction. Black’s Law Dictionary, 7th Ed. 1999.

. See, e.g., Oregon Revised Statutes (ORS) 419B.857(1).

. See Thomas, supra, at ——, 2004 WL 5823303, *4-5 and Dawson, supra, at 1.

. The view of substantial justice takes in the parties on both sides of the case. CITC 620.120(4)(a).

. The court takes judicial notice that it became operational in 1997.

. "The court shall apply the law of the Coq-uille Indian Tribe first, the law of other tribes second, federal law third, and Oregon law fourth, except to the extent that federal law governs.” CITC 610.500(2). "Law Applicable in Civil Actions” includes without limitation “the Constitution and written laws and ordinances of the Tribe, decisions of the Court which have been certified for publication by the Chief Judge, and applicable laws of the United States.” CITC 620.010(2)(a).

. CITC 610.200(l)(d)(3).

. The Nature of the Judicial Process: Lecture III. The Method of Sociology. The Judge as Legislator, 141. Cardozo, B.N., New Haven, Yale University Press 1921.

. CITC 610.200(1) requires that the court have jurisdiction in three aspects: subject matter, territorial and personal. Only subject matter jurisdiction is at issue here.

. Plaintiff’s brief response to motion to dismiss at 7

. See the court's discussion of non-facial challenges at Thomas, supra, at -—, 2004 WL 5823303, *5-6.